## The People of the State of Illinois, ex rel Charles H. Seeberger, Plaintiff in Error, v. James A. Rose, Secretary of State, Defendant in Error.

1. MANDAMUS—*what essential to maintenance of writ.* Before a writ of mandamus will issue the petitioner must show a clear legal right to the writ, also that the person sought to be coerced is in duty bound to perform the act which it is sought to compel him to do.

2. MANDAMUS—*when does not lie.* The object of a writ of mandamus is to compel the doing of some act which it is the duty of the person sought to be coerced to perform and which he refuses to perform. Where an officer or person required to perform an act has acted and completed the act which it was his duty to perform, mandamus will not lie to compel him to undo the act as performed and perform it in another manner, although the act should originally have been done in another manner.

3. SECRETARY OF STATE—*how records cannot be impeached.* The record of the secretary of state which involves the existence or nonexistence of a bill cannot be impeached by parol evidence.

Mandamus. Error to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed October 20, 1911.

MILLARD R. POWERS, GEORGE B. GILLESPIE and A. M. FITZGERALD, for plaintiff in error.

W. H. STEAD and THOMAS C. DEMPCY, for defendant in error.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

Charles H. Seeberger, relator and plaintiff in error, filed his petition for *mandamus* in the Circuit Court of Sangamon county against the Secretary of State, praying for a writ of *mandamus* to compel James A. Rose, as Secretary of State, to expunge from his

records certain parts of a record made by him in his office, and to compel him as Secretary of State to add to that record certain matters set forth in the petition for *mandamus*.

The record complained of was made by the Secretary of State showing the filing of Senate Bill No. 286 relating to the incorporation of companies for profit, in the office of the Secretary of State by the Governor after the bill had been passed by both houses of the legislature, presented to the Governor for his consideration, and deposited by him in the office of the Secretary of State. The Circuit Court sustained a demurrer to the petition, denied the writ and rendered judgment against relator for costs.

The petition alleges that this bill known as Senate Bill No. 286 was duly passed by both houses of the General Assembly and sent to the Governor for his consideration, that the bill was received by the Governor on the fourth day of June, A. D. 1909, that being the day on which the Forty-sixth General Assembly adjourned *sine die;* that on the eleventh day of June, 1909, the Governor by his private Secretary filed the bill in the office of the Secretary of State where it was properly receipted for by one of the duly commissioned clerks in that office; that the bill was not then signed by the Governor and at that time the Governor filed no objections to, or veto with, the bill, but afterwards, on the twelfth day of June, 1909, the Governor filed in the office of the Secretary of State a paper signed by him purporting to be a veto of the bill; that this alleged veto was then placed with the bill by the Secretary of State as a veto of that bill, and marked as filed in his office as of the same time the bill was marked filed so that papers appeared on his records as one transaction.

The petition prays that the Secretary of State be required to expunge from the record thus made in his office the words, *"together with the Governor's veto of said bill,"* and that in lieu thereof the Secretary of State shall be commanded to insert and place is said record the following: *"without objections to said bill by the Governor."* The petition alleges that the record so made by the Secretary of State in relation to the filing of this bill in his office by the Governor is false and fraudulent and avers that, instead of said bill having been vetoed by the Governor and for that reason having failed to become a law, it was filed without a veto and without objections, and that by reason thereof said bill became a law by virtue of Section 16, Article 5 of the Constitution, which is as follows:

"If he approve it he shall sign it, thereupon it shall become a law; but if he does not approve it, he shall return it with his objections to the house from which it shall have originated.

"Any bill which shall not be returned by the Governor within ten days (Sunday excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it, unless the General Assembly shall, by their adjournment, prevent its return, in which case, it shall be filed with his objections in the office of the Secretary of State within ten days after such adjournment, or become a law."

Section 5 Chapter 124 R. S. requires the Secretary of State to keep a fair record of all official acts of the Governor. The record made by the Secretary of State is as follows:

"June 11, 1909, received and filed this day, Senate Bill 286, relating to corporations organized for profit in this State and other states, together with the Governor's veto of said bill."

This record, the petition charges, is not a fair record of the official act of the Governor in connection with said Senate Bill 286, in that it appears by said record that said communication from the Governor was received with said bill on June 11, 1909, when, in fact, it was not so received; and the petitioner insists that the entry should be changed so as to correctly and fairly state the truth, namely; by striking out of said records the words, "together with the Governor's veto of said bill," and insert the following: "without objections to said bill by the Governor."

The petition then avers: "That said Secretary of State has been requested to correct his said records so as to fairly and truthfully show that said act was deposited in his office on June 11, 1909, without objections thereto by the Governor, but said Secretary of State wholly refused, and still refuses, to make such correction."

The prayer of the petition is,

"Wherefore, your petitioner prays a writ of *manda·mus*, directed to the said Secretary of State, James A. Rose, commanding him forthwith to strike out or erase the words 'together with the Governor's veto of said bill' on page 21 of the book kept in his office and designated 'Executive Record, Illinois 15 Secretary's Office 1907' and insert in lieu thereof the following: 'without objections to said bill by the Governor;' and if it was the duty of the Secretary of State to place any stamp or file marks or keep any record whatsoever, with respect to said communication from the Governor, that he be required and commanded to forthwith strike out and erase from said communication the words 'Filed June 11, 1909' and to place thereon, 'Filed June 12, 1909,' or such other entry notation and certification as will properly record the facts, as herein set out, and that such other and further order be made in the premises as justice may require," etc.

Petitioner does not seek to compel the Secretary of State to make a record of any official act of the Gov-

ernor of which the Secretary has failed and refused to make a record or to compel the Secretary to act in a matter in which he has failed or refused to act; but on the contrary the petition shows affirmatively that the Secretary of State has acted on the very thing involved, that he made a record and that record is set out in the petition.

It is a familiar rule of law, that before a writ of *mandamus* will issue the petitioner must show a clear legal right to the writ, also that the persons sought to be coerced is in duty bound to perform the act which it is sought to compel him to do; mere mention of the rule is sufficient, without reference to authorities.

The object of a writ of *mandamus* is to compel the doing of some act which it is the duty of the person sought to be coerced to perform and which he refuses to perform. Where an officer or person required to perform an act has acted and completed the act which it was his duty to perform, *mandamus* will not lie to compel him to undo the act as performed and perform it in another manner, although the act should originally have been done in another manner. People v. City of Chicago, 131 Ill. App. 266; Sweet v. Conley, 20 R. I. 381-85; Am. and Eng. Enc'y, 2d ed., 743; *Ex parte* Nash, 15 Q. B. 92; W. C. T. Co. v. Marshall, 49 Tenn. 121; Merrill on Mandamus, section 42.

The provisions under which an act of the Legislature may become a law have been wisely provided; and every step necessary to create it a law or defeat the act has been guarded by requirements that a complete record shall be kept thereof. It evidently was the intention of those who with so much wisdom provided for these requirements, that the record so made should be positive proof of the steps taken by the law and that upon that record the act should become a law or the act defeated. The wisdom of this requirement is manifest by the provision that a record shall be

kept of every act introduced in the legislature, show-ing its course, step by step, from the time of its intro-duction in either house, through every channel it is required to pass until it is either defeated, or be-comes a law of this state, and upon that record, when once made, the validity of the law must stand or fall. Field v. Clark, 143 N. S. 649; *In re* Gunn, 19 L. R. A. 559 (Kan.).

The law imposes upon the Secretary of State the duty of making a record of all acts of the Governor relating to all bills passed by the legislature which are placed before him for his approval or veto, and the record of the Secretary of State so made, is a part of his duty as an executive officer of the state and must be held to be a part of the record of the enactment or defeat of a bill. People v. Bowen, 21 N. Y. 517; Vol. 1, par. 60, Sutherland's Statutory Construction, 2nd ed.

When the law requires that a public official or set of public officials shall make a record of certain acts or events and such official duties are not performed as required by law and no record of the events required to be recorded has been kept, our courts have, under certain conditions, held that parol evidence may be resorted to for the purpose of proving that the officers whose action was required to be recorded actually per-formed those duties, but no record thereof was made, in order that the record required by law to be kept thereof may be properly placed upon the proper rec-ords, and while such resort to parol evidence is per-mitted to establish a record which does not exist, resort to parol evidence can never be had for the purpose of contradicting or disputing a record when once made in the perfomance of the official duties of the officer required to make it.

It is not contended that the Governor signed this bill or that he retained it in his possession such

length of time that it became a law without his signature.

The adjournment of the legislature within ten days after the presentation of Senate Bill No. 286 to the Governor, prevented his returning it to the House in which it originated, and if he filed it in the office of the Secretary of State with his objections within ten days after the adjournment of the legislature, then it did not become a law.

The record made by the Secretary of State in his office with reference to the filing of that bill appears on page 21 of Record 15 of the office of the Secretary of State, as follows: "June 11, 1909, received and filed this day Senate Bill No. 286 relating to corporations organized for profit in this and other states, together with the Governor's veto of said bill."

While upon questions which involve that record, inspection of the record may ·be resorted to for the purpose of determining what it contains, but upon the question of the accuracy of that record involving the validity or invalidity of an act of the legislature the record cannot be contradicted by parol testimony. It records the solemn and final action of the legislative and executive departments of the sovereign state necessary to create a law; the stability of the sovereignty demands that this record shall be conclusive of what it contains.

If the record in the office of the Secretary of State upon the question of whether an act passed by both houses of the legislature was vetoed by the Governor can be disputed by parol evidence, then the same rule must govern the record made upon the journals of either house. No one can seriously contend that a record made on roll call upon the passage of a bill in either house in an attempt to show that one or more members of such house did not vote as shown by the journal of that house, can be disputed by parol evi-

dence. It is necessary to insure the stability of personal rights, liberty and property that such records shall import absolute verity. The memory of man is so frail and transitory and frequently so self-serving to the party interested that under certain conditions it is wholly unreliable, and the result of relying thereon for proof of matters so vital to the government or to citizens is fraught with such danger that the record must be held to be beyond contradiction, and parol evidence ought never to be received in contradiction of that record. To permit the truth of this record to be disputed by parol testimony would result in chaos and anarchy. Wabash R. R. Co. v. Hughes, 38 Ill. 174; Regan v. Lynch, 68 Ind. 516; Pacific R. R. Co. v. Governor, 23 Mo. 353; People v. McCullough, 210 Ill. 488.

The record made by the Secretary of State in his office as provided by section 5, chapter 124 of the Revised Statutes, shows the bill was filed in his office by the Governor within ten days after the final adjournment of the legislature, with the objections of the Governor thereto. This record imports absolute verity and cannot be impeached by parol. Weeks v. Smith, 81 Me. 538.

The petition upon its face discloses that in order to sustain the averments therein resort to parol testimony must be had, and the Circuit Court properly sustained the demurrer and dismissed the petition at relator's cost.

The judgment is affirmed.

*Affirmed.*