THE STATE BOARD OF AGRICULTURE, Appellant, *vs.* JAMES J. BRADY, State Auditor, *et al.* Appellees.

*Opinion filed February 17, 1915.*

1. APPEALS AND ERRORS—*when interest of State justifies direct appeal to Supreme Court.* The State has a direct, substantial and monetary interest in a *mandamus* proceeding to compel the Auditor of Public Accounts to issue warrants for the payment to the petitioner of money from the State treasury without compliance with the Appropriations act or the State Civil Service act, and such interest authorizes a direct appeal to the Supreme Court from the judgment of the trial court dismissing the petition.

2. APPROPRIATIONS—*Omnibus Appropriations act applies to appropriations to State Board of Agriculture.* Section 2 of the Omnibus Appropriations act of 1913, directing the Auditor of Public Accounts to draw warrants on the State Treasurer for all sums appropriated to pay employees (when not otherwise provided for) on monthly pay-rolls, certified by the heads of departments or boards requiring such services, applies to appropriations to the State Board of Agriculture for salaries of employees, and sec-

tion 7 of the act to revise the law in relation to the department of agriculture, as amended in 1913, does not apply.

3. SAME—*appropriations to State Board of Agriculture are for specific purposes.* The appropriations made by the Appropriations act of 1913 to the State Board of Agriculture for salaries of its employees were not made to the board to be expended for the advancement of the interests of agriculture, horticulture, manufactures or domestic arts, but were appropriations of different sums for specific purposes and to be expended for such purposes alone.

4. STATE BOARD OF AGRICULTURE—*members are not State officers nor are its employees in the service of the State.* The fact that the State Board of Agriculture is an arm or agency of the State is not conclusive of the question whether the members are State or public officers, and in order to maintain the legal existence of the board it must be held that its. members are not State or public officers, and that neither they nor their employees are in the service of the State nor subject to the State Civil Service act.

5. CONSTITUTIONAL LAW—*the power of appointment to office is a privilege or franchise.* The power of appointment to office is a privilege or franchise not belonging to citizens generally by common right, and under section 22 of article 4 of the constitution the legislature cannot confer such power upon agricultural societies or other voluntary associations or individuals; and as the members of the State Board of Agriculture are appointed in such manner it must be held that they are not State or public officers, otherwise the law creating such board would be unconstitutional and void.

6. MANDAMUS—*writ may be awarded as to one act and denied as to another.* Where a petitioner for a writ of *mandamus* seeks to compel the performance of two different acts the writ may be awarded as to one and denied as to the other.

7. SAME—*when denial of writ is proper.* Where a petitioner seeks to compel the drawing of warrants by the Auditor of Public Accounts without complying with either the Appropriations act of 1913 or the State Civil Service act, a judgment denying the writ is proper if the petitioner was bound to comply with one of such acts.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

GEORGE B. GILLESPIE,. and A. M. FITZGERALD, for appellant.

P. J. LUCEY, Attorney General, and GEORGE P. RAMSEY, for appellees.

266 – 38

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The 86th paragraph of the act entitled "An act to provide for the ordinary and contingent expenses of the State government until the expiration of the fiscal quarter after the adjournment of the next regular session of the General Assembly," in force July 1, 1913, (Laws of 1913, p. 95,) made appropriations of various sums to the appellant, the State Board of Agriculture. Included among the items were the following: For the salary of secretary $3500 per annum, for salary of chief clerk $2000 per annum, receiving and shipping clerk $1200 per annum, stenographer $1200 per annum, statistical clerk $1200 per annum, janitor $600 per annum and filing clerk $1000 per annum, amounting, in the aggregate, to $10,700. The appellant petitioned the circuit court of Sangamon county for a writ of *mandamus* commanding the appellee James J. Brady, Auditor of Public Accounts of the State, to issue his warrant for said aggregate sum, directed to the appellee William Ryan, Jr., Treasurer of the State, payable to appellant, and commanding the Treasurer to pay the same, and alleged a demand and refusal to perform such acts. The appellees demurred, and the court sustained the demurrer and dismissed the petition. The appellant removed the record by appeal to the Appellate Court for the Third District, and that court finding that it was without jurisdiction, transferred the cause to this court.

The appellant moved the court to remand the cause to the Appellate Court, and the motion was reserved to the hearing and taken for decision on submission of the cause.

Section 118 of the Practice act provides that appeals in cases in which the State is interested, as a party or otherwise, shall be taken directly to this court. The judge of the circuit court certified, in accordance with section 104 of the Practice act, the following questions of law arising in the case, with his decision thereon:

1. "Whether the provisions of the Omnibus Appropriation bill in relation to vouchers, certification of the Governor, and other formal requirements for the issue of an Auditor's warrant and drawing money from the State treasury for salaries, expenses and other lawful expenditures of the board of agriculture, apply to such items, or whether the provisions of the act creating the board of agriculture, and amendments thereto, have application.

2. "Whether the State Civil Service act, with amendments thereto, has application to the State Board of Agriculture, and whether salaries of officers and employees of the State Board of Agriculture must be certified by the civil service commission, as required by the provisions of said act, before any funds appropriated to the State Board of Agriculture may be drawn from the State treasury for the use of said board."

His decision was, that the provisions of the Appropriation act and the State Civil Service act both applied to the State Board of Agriculture, and that the money of the State could not be withdrawn from the State treasury except upon compliance therewith. The interest of the State authorizing an appeal to this court must be direct and substantial, and the State has such an interest in this case, which seeks to take the money of the State out of its treasury. The State has a direct, substantial and monetary interest in the subject matter of the controversy. (*McGrath v. People,* 100 Ill. 464; *Canal Comrs.* v. *Sanitary District,* 191 id. 326.) The motion is denied.

The second section of the act making the appropriations in question authorized and·directed the Auditor of Public Accounts to draw warrants on the State Treasurer for all sums appropriated by the act for the pay of clerks, secretaries, porters, messengers, janitors, watchmen, policemen, laborers, engineers, firemen, stenographers, curators, librarians and other employees, when not otherwise provided for by law, to be paid on monthly pay-rolls duly certified

to, respectively, by the heads of departments or by boards of commissioners and trustees requiring the services of such employees. The claim of the appellant to a right to receive the total sum appropriated for pay of the several employees mentioned in the act making the appropriations is based on section 7 of the act to revise the law in relation to the department of agriculture, agricultural societies and agricultural fairs and to provide for reports of the same, (Laws of 1883, p. 1,) as amended in 1913. (Laws of 1913, p. 3.) That section provides that whatever money shall be appropriated to the department of agriculture shall be paid to the State Board of Agriculture and may be expended by the board as in the opinion of said board will best advance the interests of agriculture, horticulture, manufactures and domestic arts in this State, and it also provides for a division of appropriations made for the benefit of county fairs or agricultural societies among such fairs or societies holding annual fairs. The appropriations in question in this case were not made to the State Board of Agriculture to be expended for the advancement of the interests of agriculture, horticulture, manufactures or domestic arts, but they were appropriations of different sums for specific purposes and to be expended for such purposes alone. There is no other provision of the law applicable to the payment of the sums in question and the General Assembly had full power to prescribe the conditions upon which payment should be made. Having that power, it was provided that the sums should be paid on monthly pay-rolls duly certified to by the heads of departments or by boards of commissioners and trustees requiring the services of the employees. The decision of the court on the first question was right.

The second question is whether the pay-rolls must be certified by the State Civil Service Commission. The Civil Service act requires the commissioners to classify all the offices and places of employment in the State service except such officers and employees as are specifically exempted by

section 11, and it prohibits the issue of any warrant on the treasury by the Auditor or any disbursing officer of the State to pay any salary or compensation to any person in the classified service of the State unless on a pay-roll or account bearing the certificate of the commission. The question will be solved by deciding whether the persons named in the Appropriation act are in the service of the State. The other act already referred to relates to the department of agriculture, agricultural societies and agricultural fairs, and it provides that the department of agriculture shall be managed by a board to be styled "State Board of Agriculture," to consist of a president and one vice-president from each congressional district of the State and the last ex-president of the board, the president and vice-presidents to be elected on the fair grounds of the annual State fair every two years by delegates or alternates, or their written proxies, chosen by the several agricultural societies in the counties where such societies exist, and where no society exists delegates may be appointed by the board of supervisors or county board. The State Board of Agriculture is to have control of the affairs of the department of agriculture and of State fairs and fat stock shows, and must make and deliver to the Governor an annual report of their doings. The situation presents the alternative that either the members of the State board are not officers of the State and have no powers or functions as officers, or the act is unconstitutional and void and the board has no legal existence. Section 22 of article 4 of the constitution prohibits the passage of any law granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise, and the power of appointment to public office is an attribute of sovereignty. Such a power is a privilege or franchise not belonging to citizens generally by common right, and it cannot be conferred upon agricultural societies or other voluntary associations or individuals. If such associations could appoint officers of the State

under the name of the State Board of Agriculture, they could be authorized to appoint every public officer created by statute, which the constitution forbids. This question was settled in the case of *Lasher* v. *People*, 183 Ill. 226, where an act providing that inspectors of produce, exercising the powers of officers, should be composed of members of the Illinois State Horticultural Society, the Illinois State Dairymen's Association, and other societies, was declared unconstitutional and void. This law has been in existence for very many years and has constantly been recognized as valid, and it can and should be sustained by regarding the State Board of Agriculture as an organization not composed of public officers but controlled by and aided by the State for the promotion of the interests of agriculture, horticulture, manufactures and domestic arts. Appropriations have been made repeatedly, and were made by the same General Assembly, to the Illinois State Horticultural Society, the State Bee-keepers' Association, the Dairymen's Association, the Firemen's Association, the Illinois Live Stock Breeder's Association and the Illinois State Poultry Association, to promote the general welfare of the people of the State, and the fact that some of them are called State societies or associations indicates nothing as to their relation to the State. It was held in *Minear* v. *State Board of Agriculture*, 259 Ill. 549, that the State board was created as an arm or agency of the State and for the efficient management of the department of agriculture, including the holding of State fairs, but the fact of maintaining such a relation to the State is not conclusive of the question whether its employees are in the service of the State. Undoubtedly, its relation to the State is somewhat anomalous. The lands and property under its control are the lands and property of the State, but it is authorized to, and does, conduct on such property a State fair in its uncontrolled discretion in all respects. As many as 350,000 have paid admission to the State fair in a single season and the receipts

from the State fair in 1913 were $342,531.40. None of the money so received goes, or ever has gone, into the treasury of the State but has been expended by the board as it pleased. The board is required to make an annual report to the Governor, but the report appears to be only for the purpose of informing the Governor what the association has done. The State has made large appropriations to the State Board of Agriculture for the purchase of lands and erection of buildings, but if its members managing and controlling its affairs and performing its functions are not officers of the State, the persons in its service are not in the service of the State and are not comprehended within the terms of the Civil Service act. To maintain the legal existence of the State Board of Agriculture it must be held that the members are not officers of the State or public officers and neither they nor their employees are in the service of the State, although the State makes use of the board as an agency for the public good. The decision of the circuit court on the second question was incorrect.

Where a petitioner for a writ of *mandamus* seeks to compel the performance of two different acts, the writ may be awarded as to one and denied as to the other, (*Illinois Watch Case Co.* v. *Pearson*, 140 Ill. 423,) but the petitioner in this case sought to compel the issuing and payment of a warrant without complying with either the Appropriation act or the Civil Service act, and if it was bound to comply with either the writ was properly denied. The error as to the second question will not, therefore, cause a reversal of the judgment.

The judgment is affirmed.        *Judgment affirmed.*