(No. 33946.— )

SANGAMON COUNTY FAIR AND AGRICULTURAL ASSOCIA-
TION *et al.*, Appellants, *vs.* STILLMAN J. STANARD, Di-
rector of the Department of Agriculture, *et al.*, Ap-
pellees.

*Opinion filed September 25, 1956.*

HERSHEY, J., took no part.

JAMES S. CRAVEN, and ALLEN T. LUCAS, both of Springfield, for appellants; GEORGE P. COUTRAKON, and THOMAS W. HOOPES, both of Springfield, for separate appellant.

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., and LUCIEN S. FIELD, of counsel,) for appellees.

WEYMOUTH KIRKLAND, THOMAS M. THOMAS, and THOMAS F. SCULLY, all of Chicago, for Metropolitan Fair and Exposition Authority, *amicus curiae*.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Certain plaintiffs-appellants appeal directly to this court from a decree of the circuit court of Sangamon County granting defendants' motion to strike and dismiss the plaintiffs' second amended complaint to enjoin disbursements from the Fair and Exposition Fund on the ground that the 1955 amendment to the State Finance Act is unconstitutional. Ill. Rev. Stat. 1955, chap. 127, par. 142i.

Since the constitutionality and validity of a State statute and the public revenue are directly involved the appeal properly comes direct to this court.

Section 6i of the State Finance Act (Ill. Rev. Stat. 1955, chap. 127, par. 142i) was extensively amended by House Bill No. 734 of the 69th General Assembly, being a bill entitled "An Act to amend Section 6i of 'An Act in relation to State finance,' approved June 10, 1919, as amended." (Laws of 1955, p. 1338.) In substance section 6i as thus amended sets up the Fair and Exposition Fund, provides for its administration by the Department of Agriculture, authorizes distribution from the fund to county fairs in counties with a population of less than 500,000 and to fair and exposition authorities in counties with a population of 500,000 or more. Funds distributed pursuant to this section may be expended for financing industrial, cul-

tural, educational, trade and scientific exhibits and for construction and equipping of auditoriums and buildings for such purposes. The 1955 amendment added authority to use distributed funds for payment of the principal and interest upon revenue bonds issued for any of the foregoing purposes and deleted the provision permitting use of the funds for agricultural premiums. The amendatory act also provided that a participant, to be eligible to receive appropriations under the statute, must hold the land on which the fair or exposition is to be conducted as a fee or under a lease of at least 40 years duration and that upon receiving a distribution from the fund the treasurer of the participant should file with the Director of the Department of Agriculture a penal bond equalling the sum distributed and conditioned upon the lawful expenditure of the money distributed. The amendatory act also provided that before any money is distributed to any participant under said section the participant shall file with the said Director a schedule showing the purpose for which the State funds are to be spent and also an accounting of such funds at the end of the calendar year following distribution. Failure to comply with any provision of such paragraph bars a participant from further distribution of money. The Department of Agriculture was further authorized to make and enforce such rules and regulations as it deems necessary to carry out and enforce the provisions of the act.

Suit was filed as a taxpayer class action for an injunction to enjoin disbursement of the public funds, alleging unconstitutionality of said amendatory act for the following reasons:

(1) It violates section 13 of article IV of the Illinois constitution in that the title of the amendatory act embraces more than one subject.

(2) It violates section 1 of article IV of the constitution in that (a) it delegates legislative powers to an administrative officer; (b) it confers administrative discretion

upon an administrative officer without supplying any standards or definitions, and (c) it is so vague, indefinite and uncertain that the legislative intention cannot be ascertained.

(3) It violates section 13 of article IV of the constitution in that House Bill 734 was not read at large on three different days in the House of Representatives but was, in the third reading, read by title only and not at large.

The legislative history of said bill is alleged in detail in the complaint in substance as follows: Introduced on April 13, 1955, and referred to the House Executive Committee; heard before the executive committee of the House on May 11, 1955, amended by committee and reported by committee to the House with recommendation "do pass" as amended; first reading on May 12, 1955, and advanced to order of second reading; called on order of second reading on May 18, 1955, amended, read the second time and advanced to order of third reading; called on order of third reading for passage on June 7, 1955, title of bill only read by chief clerk, demand by representative for reading at large and in full, refusal by Speaker to order reading in full and at large, called for vote on passage and passed; legislative protest signed by two representatives filed on or about June 8, 1955, protesting and dissenting from passage for failure to read in full; legislative protest signed by five representatives, filed on or about June 14, 1955, protesting and dissenting from passage of the bill for failure to read at large on the order of the third reading or at any time thereafter; bill reported to the Senate, passed thereby, and approved by the Governor on July 9, 1955.

Attached to the complaint as exhibit "A" and incorporated therein was page 20 of the House Journal of June 7, 1955, wherein it is specifically stated in reference to said House Bill as follows: "having been transcribed and typed and all amendments adopted thereto having been printed, was taken up and read at large a third time."

The trial court in allowing the defendant's motion and

dismissing the complaint held that the amendatory act was valid and constitutional and not unconstitutional for any of the reasons assigned in the complaint.

George P. Coutrakon, separate plaintiff and appellant, by leave of court filed in the same proceeding his separate complaint challenging the constitutionality of the amendatory act as follows:

(1) It violates section 2 of article II of the constitution in basing distribution from the fund to participants upon population of the participant's county.

(2) It violates section 2 of article II of the constitution in prohibiting use of the funds distributed for agricultural premiums under section 28 of the State Finance Act.

(3) It violates section 11 of article II of the constitution in penalizing failure to comply with provisions of the amendment with permanent exclusion from benefits of the fund.

Plaintiffs' complaint objects that provisions of the amendatory act relating to issuance of revenue bonds are not embraced within the subject of the amendatory act as expressed in its title. In addition, plaintiffs argue that certain other provisions of the amendment are incongrous with the title, namely the provisions specifying (1) the manner in which land must be held, (2) that officers must file a penal bond, (3) the right of the Department of Agriculture to make rules and regulations, (4) that appropriations may be used for certain stated purposes and others as may be provided for, (5) the filing of schedules with the Department of Agriculture, and (6) that participants make an accounting to the Department of Agriculture. Plaintiffs' brief does recognize that all of these last named provisions are conditions to the expenditure of public funds for the benefit of county fairs and fair and exposition authorities.

When the title of the act amended is set forth in the

title of the amendatory act, as was here done, any provision which might have been inserted in the original act may be incorporated in the amendatory act. (*Baim* v. *Fleck,* 406 Ill. 193.) It is for the legislature to determine how broad and comprehensive or how specific the title of an act shall be. (*People ex rel. Sanitary District* v. *Schlaeger,* 391 Ill. 314; *People ex rel. Gage* v. *Village of Wilmette,* 375 Ill. 420.) The constitution is obeyed if all the provisions of the act relate to one subject indicated in the title and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view. (*People ex rel. Brenza* v. *Gebbie,* 5 Ill.2d 565.) The title of an act need not contain all the details thereof nor be an index of its contents. *Johnson* v. *Halpin,* 413 Ill. 257.

The title of the act here in question is in reference to "State finance." The word "State" obviously refers to the State of Illinois. Both parties agree that the meaning of "finance" in Webster's New International Dictionary as "The science and practice of raising and expending public revenue" is the most accurate definition thereof, as do we.

The new provisions of the act relating to revenue bonds are limited to the purposes previously set forth in the act of financing exhibits and constructing and equipping auditoriums and exposition buildings for such exhibits from State funds. It is readily apparent that such provision has a natural and logical connection with and is definitely tied in to the retained provisions. The amendatory act merely provides for the distribution of State monies to specified recipients on certain terms and conditions for certain purposes. County fairs or fair and exposition authorities are not regulated by the act, but only the expenditure of money from a State fund. Since the other various provisions are conceded to be conditions to the expenditure of public funds, and are directly attached to such grants, they are germane to and directly connected with State finance, and are within the scope of the title of the act.

Plaintiffs also complain that the use of the words "financing industrial, cultural, educational, trade and scientific exhibits," constitutes an unlawful delegation of legislative power and a grant of administrative discretion without supplying any standards or definitions, and is so vague, uncertain and indefinite that the legislative intent cannot be ascertained, all in violation of section 1 of article IV of the constitution.

It is not possible for the General Assembly to deal with the details of each particular case which may arise in the administration of an act, and since the requirements of a statute can be stated only in general terms, a reasonable discretion must necessarily be reposed in administrative officials charged with its enforcement. (*Zehender & Factor, Inc.* v. *Murphy*, 386 Ill. 258; *People ex rel. Rice* v. *Wilson Oil Co.*, 364 Ill. 406.) If the words used in a statute, taken in connection with their context, are commonly understood, their use does not render the statute invalid. *Triner Corp.* v. *McNeil*, 363 Ill. 559.

It would be difficult for the General Assembly to specifically state just what activities should be indulged in by a fair and exposition authority or by a county fair, and the legislature has used general terms to express these requirements. Although these terms are general, yet they are commonly understood, have been used in other statutes for many years, and are sufficiently certain that persons may correctly apply them. They spell out the framework of the legislative intent and leave the details to the reasonable discretion of the administrative officer who is given authority to administer the law.

A reading of the act in question readily discloses that the legislative intent and meaning in the use of other words such as "county fair," "fair and exposition authority," "participant" and other phrases is not vague, indefinite or uncertain as contended by plaintiffs.

In reference to the power granted to the Department of

Agriculture to make and enforce rules and regulations, the authority of the Department is limited to such rules as are necessary "to carry out and enforce the provisions of this section" not just "as it deems necessary" and any regulations adopted must be reasonable. This delegation of authority to make rules is proper. *People ex rel. Mosco* v. *Service Recognition Board*, 403 Ill. 442.

As heretofore set forth, separate plaintiff Coutrakon contends that the amendatory act in three respects violates section 2 of article II of the constitution, which provides that no person shall be deprived of life, liberty or property without due process of law. No objection is made to the act as being special legislation or granting special privileges in violation of section 22 of article IV of the constitution. Does the present act deprive any county fair or fair and exposition authority of life, liberty or property? Clearly the act involves no deprivation of life or liberty. The act specifies the terms, conditions, and circumstances under which a county fair or fair and exposition authority may receive a grant of funds from the State for certain purposes. At the most, such fair or authority could have only an expectation or anticipation of receiving a gift or bounty from the State. They at no time have any vested right to such gift or bounty, and no property interest therein. A right to be within the constitutional protection must be vested, or be something more than a mere expectancy. (*Dodge* v. *Board of Education*, 364 Ill. 547; *Peoples Store of Roseland* v. *McKibbin*, 379 Ill. 148; *People ex rel. Eitel* v. *Lindheimer*, 371 Ill. 367.) None of the plaintiff Coutrakon's objections are well founded.

Finally, it is contended that the act is unconstitutional for failure to read the bill at large on third reading in the House of Representatives, in violation of that part of section 13 of article IV of the constitution which provides that "Every bill shall be read at large on three different days, in each house." Although the complaint alleges such

failure to read at large, it also incorporates therein by reference an exhibit of the House Journal. Such exhibit affirmatively shows the amendatory bill to have been read at large. An exhibit attached to a complaint controls, and a motion to strike does not admit allegations in conflict with facts disclosed by the exhibit. (*Fowley* v. *Braden,* 4 Ill.2d 355.) The parliamentary history of an act or bill in the legislative journals is the only evidence that is recognized by the courts in this State, and the journals cannot be aided or contradicted by other documents or evidence of any kind. *People ex rel. Sellers* v. *Brady,* 262 Ill. 578; *People ex rel. Seeberger* v. *Rose,* 164 Ill. App. 159, aff'd. 254 Ill. 332.

The plaintiffs argue, however, that the legislative dissents and protests to the alleged failure to read the bill at large appear in the House Journal, that the journal therefore has the affirmative recitation that the bill was not read three times, is contradictory on its face and that such patent ambiguity therein must be resolved by evidence outside the journal. The fallacy in such argument is that the legislative dissents appearing in the journal thereby make the journal itself show there was no third reading. Such conclusion does not follow. The journal establishes merely that the dissents were filed and does not establish the truth or accuracy of statements contained therein. The journal record of reading is conclusive. Section 10 of article IV of the constitution provides that any two members of either house shall have the liberty to dissent from and protest against any act which they think injurious to the public or to the individual, and have the reasons entered upon the journals. Such a protest or dissent has no force to contradict the journal. (*Auditor General* v. *Board of Supervisors of Menominee,* 89 Mich. 552, 51 N.W. 483.) The liberty of protest and dissent is a personal privilege merely, has no force as legislative action and cannot be resorted to to nullify a legislative act. It has no force as a statement of fact contradicting the journal.

The amendatory act is a valid enactment not subject to the constitutional objections advanced and the decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.