(No. 34024, 34048 Cons.—

THE PEOPLE *ex rel.* George P. Coutrakon, Appellant, *vs.* LENNOX R. LOHR *et al.,* Appellees.—SANGAMON COUNTY FAIR AND AGRICULTURAL ASSOCIATION *et al.,* Appellants, *vs.* STILLMAN J. STANARD *et al.,* Appellees.

*Opinion filed November 26, 1956.*

540

Hershey, J., took no part.

George P. Coutrakon, State's Attorney, Thomas W. Hoopes, James C. Craven, and Allen T. Lucas, all of Springfield, for appellants.

Latham Castle, Attorney General, of Springfield, and Kirkland, Fleming, Green, Martin & Ellis, and Werner W. Schroeder, both of Chicago, (Lucien S. Field, Weymouth Kirkland, Thomas M. Thomas, and Thomas F. Scully, of counsel,) for appellees.

Mr. Justice Davis delivered the opinion of the court:

The questions arising in these consolidated cases involve the validity of enacted House Bill 733, entitled: "An Act to provide for a Metropolitan Fair and Exposition Authority in metropolitan Cook County and to define its powers and duties," to be known as the Metropolitan Fair and Exposition Authority Act. Ill. Rev. Stat. 1955, chap. 34, pars. 155g1 *et seq.*

They arise out of two separate cases decided by the circuit court of Sangamon County. Number 34024 was a complaint in *quo warranto* brought by George P. Coutrakon, as State's Attorney of Sangamon County, against the Metropolitan Fair and Exposition Authority and the members of its board, seeking a determination that the act creating the Authority is unconstitutional. The Sangamon, Morgan, and Cass County Fair Associations and their presidents, intervened as additional plaintiffs. Number 34048 was a taxpayers' action in which the Sangamon, Morgan, and Cass County Fair Associations and their presidents are plaintiffs, and the Director of the Department of Agriculture of the State of Illinois, and the State Auditor and Treasurer are defendants. In this action the plaintiffs seek to restrain the defendant Authority from entering into leases with the Chicago Park District for the use of park property for an exposition building, and from applying for and receiving any money from the Fair and Exposition Fund, and ask other relief. The State's Attorney of Sangamon County joined in the complaint as coplaintiff, and the Authority is an intervenor-defendant in this action.

In both cases, the trial court granted motions to strike and dismiss the complaints. Plaintiffs appealed directly to this court since the constitutionality of a State statute and the public revenue are involved. Since the two cases both challenge the constitutionality of the Metropolitan Fair and Exposition Authority Act, and contain common specifica-

tions of unconstitutionality, we granted a motion to consolidate them upon appeal.

The Metropolitan Fair and Exposition Authority Act created a municipal corporation, the Metropolitan Fair and Exposition Authority, hereinafter called the "Authority," in the "metropolitan area," that territory lying within the corporate boundaries of the county of Cook. In section 3 it was given the power to sue and be sued in its corporate name, and in section 4 to "promote, operate and maintain fairs, expositions and conventions from time to time in the metropolitan area and in connection therewith to arrange, finance and maintain industrial, cultural, educational, trade and scientific exhibits and to construct, equip and maintain auditoriums and exposition buildings for such purposes," and was further granted "all rights and powers necessary to perform such duties." In subsequent sections the Authority was given further express rights and powers to accept from the Chicago Park Fair, a private not-for-profit corporation, an assignment of whatever sums of money it may have received from the Fair and Exposition Fund, as well as its contracts; to receive such sums as may be distributed to it from the Fair and Exposition Fund; to own, lease, construct, operate and maintain fair and exposition grounds and facilities, to lease the same, and collect reasonable nondiscriminatory charges to defray the expenses of the Authority; to pay principal and interest on any revenue bonds it may issue; to enter into contracts concerning the objects and purposes of the act; to borrow money for the purposes of the act; and (in section 10) to issue revenue bonds payable solely from the revenues or income to be derived from the fairs, expositions and exhibitions and other authorized activities operated by it, "and from funds, if any, received and to be received by the Authority from the Fair and Exposition Fund, as allocated by the Department of Agriculture of this State." The act further provides that under no circumstances shall

any bonds issued by the Authority, or any other obligation of the Authority be an indebtedness or obligation of the State of Illinois. (Ill. Rev. Stat. 1955, chap. 34, par. 155g11.) These revenue bonds were, by section 12 of the act, (Ill. Rev. Stat. 155, chap. 34, par. 155g12,) made legal investments for municipalities, banks, insurance companes, trustees, fiduciaries, building and loan associations and others.

Two companion bills were enacted at the same time as the Metropolitan Fair and Exposition Authority Act. House Bill No. 734 amended section 6i of "An Act in Relation to State Finance." (Ill. Rev. Stat. 1955, chap. 127, par. 142i.) Insofar as it is material here, section 6i as amended sets up the Fair and Exposition Fund, and provides for appropriations thereto, disbursements thereof, and for its administration by the Department of Agriculture. Distribution from the fund is authorized to county fairs in counties with a population of less than 500,000, and to fair and exposition authorities in counties with a population of 500,000 or more. Appropriations pursuant to this section may be expended for financing industrial, cultural, educational, trade and scientific exhibits, and for constructing and equipping auditoriums and buildings for such purposes, or for payment of the principal and interest upon revenue bonds issued for any of the foregoing purposes. The constitutionality of section 6i of the State Finance Act was upheld in *Sangamon County Fair and Agricultural Association* v. *Stanard,* 9 Ill.2d 267, decided at the September, 1956, term.

House Bill No. 735, enacted as "An Act to authorize certain park districts to lease park property to a Metropolitan Fair and Exposition Authority and to maintain and operate such property for exposition and other purposes upon the conditions set out herein" (Ill. Rev. Stat. 1955, chap. 105, pars. 327v6 and 327v7,) authorized park districts located in whole or in part in any city having a

population of 500,000 to lease, with certain specified restrictions, to a Metropolitan Fair and Exposition Authority for a term not exceeding forty years, any parcel or parcels of land to be maintained by such Authority for its lawful corporate purposes.

For the purposes of this consolidated appeal, we shall consider all the specifications of unconstitutionality. The points raised by the various plaintiffs are properly before the court, and therefore the proceeding in which they were raised below is of no significance on this appeal. Points raised by the pleadings and appeal are that the Metropolitan Fair and Exposition Authority Act violates:

(1) Section 13 of article IV of the Illinois constitution in that it embraces subjects not expressed in its title, amends other acts without specific reference thereto, and in that it was not read at large on three different days in the House of Representatives, even though the House Journal recites such fact.

(2) Section 22 of article IV in that it is an improper special law and grants special powers, privileges, and immunities to a private corporation.

(3) Section 26 of article IV which prohibits the State from being made a party defendant in any suit, in that section 3 of the act permits suits to be filed against the Authority as an agency of the State.

(4) Section 10 of article IX in that it allegedly provides for appropriations of money for the corporate purposes of a municipal corporation performing no State function, and in that it provides a tax upon municipal corporations or inhabitants thereof for corporate purposes.

(5) Section 1 of article IV in that it contains an unlawful delegation of legislative powers.

(6) Section 12 of article IX in that it authorizes the authority to create debts without limitation and no provision is made for a tax to pay the same, and that it fails to provide for the discharge of a debt within 20 years.

(7) Section 18 of article IV in that it provides for appropriations of funds which may not necessarily be used for governmental purposes, and it contains a pledge of a continuing appropriation.

(8) Section 20 of article IV in that it creates a State debt.

(9) Article III in that the Authority is given the power to pass ordinances sanctioned by fines.

(10) Section 2 of article II of the constitution in that it provides no procedure for reviewing the imposition of fines and penalties, and in that it is vague and uncertain in meaning, and incapable of execution.

(11) Section 1 of article XI in that it creates a corporation by special law.

Plaintiffs also contend that the Authority Act is in direct conflict with sections 1 and 2 of the above cited act in regard to leasing park district property, in that the latter act gives the park districts power to regulate the premises demised to the Authority, while the Authority Act gives the same power to the Authority, and that there is also a conflict as to police power over the demised premises.

In considering the foregoing points, we must first determine if the Authority is a municipal or private corporation. It is argued that the powers of the Authority are proprietary rather than governmental, and the Authority is therefore a private corporation. The same argument was more fully made and rejected by this court in *People* v. *Chicago Transit Authority,* 392 Ill. 77. The Authority Act contains analogous provisions to the Metropolitan Transit Authority Act there upheld. The Authority is authorized to fix and collect fees and charges for its facilities, and to pass and enforce ordinances. Its records and ordinances are made public records, and public hearings are to be held with respect to the enforcement of its ordinances, rules and regulations. The intention to create a municipal corporation for public purposes is clearly expressed. Like pro-

visions were held to create a municipal corporation in the *Transit Authority case,* which we feel is controlling here. See *People* v. *Chicago Transit Authority,* 392 Ill. 77, 90.

Holding that the Authority is a species of municipal corporation, we next turn to the applicability of section 22 of article IV of the constitution. That section provides that the General Assembly shall not pass local or special laws in certain enumerated cases, among which are: "Incorporating cities, towns or villages," and "Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." It further provides that "in all other cases where a general law can be made applicable, no special law shall be enacted." We think it clear that the Authority Act is a local or special law and that it grants to a municipal corporation certain special and exclusive privileges for public purposes. However, we have long held that municipal corporations, with the specific exception of "cities, towns or villages," unlike private corporations, may be created by special law and be granted special privileges. (*People ex rel. Gutknecht* v. *Chicago Regional Port Dist.* 4 Ill.2d 363.) In the *Port District case* we said at page 372: "It is also well settled that the only municipal corporations which cannot be created by special law within the terms of said provision of the constitution are cities, towns and villages. (*Wilson* v. *Board of Trustees,* 133 Ill. 443; *Sanitary District* v. *Ray,* 199 Ill. 63; *Kocsis* v. *Chicago Park District,* 362 Ill. 24; *People* v. *Chicago Transit Authority,* 392 Ill. 77.)" We have upheld the validity of the creation of the Chicago Sanitary District (*Wilson* v. *Board of Trustees,* 133 Ill. 443); the Chicago Transit Authority, (*People* v. *Chicago Transit Authority,* 392 Ill. 77; *Schuman* v. *Chicago Transit Authority,* 407 Ill. 313); the Chicago Park District, (*Kocsis* v. *Chicago Park District,* 362 Ill. 24); the Chicago Regional Port District (*People ex rel. Gutknecht* v. *Chicago Regional Port District,* 4 Ill.2d 363); and the

Illinois State Toll Highway Commission, (*People* v. *Illinois Toll Highway Commission*, 3 Ill.2d 218), all municipal corporations created by special law. Plaintiffs concede that we have held, in an unbroken line of decisions, that the prohibitions of section 22 of article IV do not apply to municipal corporations, but they argue that this precedent should now be re-examined and reversed. We find in their argument no compelling reason to so do. To now announce a construction of section 22 as urged by plaintiffs would be to virtually prohibit the creation of any municipal corporation for the public purpose of delegating governmental functions of the State. No logical argument has been offered for such a construction. We further find no ground for reviewing or reversing the legislative determination that no general law could be made applicable in this case. (*Owners of Lands* v. *People ex rel. Stookey*, 113 Ill. 296, 315.) We therefore find that the act does not violate section 22 of article IV.

We next consider if the act complies with the formal requirements of section 13 of article IV, which deals with the printing, procedural, and other requisites for the enactment of legislation. Insofar as it is applicable here, the section provides: (1) that no act shall embrace more than one subject, and that shall be expressed in the title; (2) that no law shall be amended by reference to its title only, but the section amended shall be inserted at length in the new act; and (3) that every bill shall be read at large on three different days, in each house. In construing the constitutional requirement of a singleness of subject, the tendency has been to adopt a liberal, rather than a strict, construction. To render a provision in the body of a statute void because it is not embraced in its title, the provision must be one which is incongruous or which has no proper connection with the title of the act. (*People ex rel. Brenza* v. *Gebbie*, 5 Ill.2d 565, 587.) Generally, it is for the legislature to determine how broad and comprehensive or how

specific the title of an act shall be. (*Sangamon County Fair and Agricultural Association* v. *Stanard,* 9 Ill.2d 267; *People ex rel. Sanitary District of Chicago* v. *Schlaeger,* 391 Ill. 314; *People ex rel. Gage* v. *Village of Wilmette,* 375 Ill. 420.) As we said in the *Sangamon County Fair case,* upholding the companion act (Ill. Rev. Stat. 1955, chap. 127, par. 142i): "The constitution is obeyed if all the provisions of the act relate to one subject indicated in the title and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the one object in view. (*People ex rel. Brenza* v. *Gebbie,* 5 Ill.2d 565.) The title of an act need not contain all the details thereof, nor be an index of its contents. *Johnson* v. *Halpin,* 413 Ill. 257."

Viewed in the light of these rules, we think it clear that the act embraces but one subject, the establishment of a Metropolitan Fair and Exposition Authority, which is clearly expressed in the title. The plaintiffs urge that the provisions of the act authorizing the Chicago Park Fair to turn over its State funds to the Authority, declaring the Authority's bonds to be negotiable instruments, and declaring such bonds to be legal investments of insurance companies, banks, and others, involve more than one subject, and amend other acts not referred to in the title. Under the rules announced, we feel that all of these provisions clearly relate to the single general subject of creating the Authority and defining its powers and duties. They are clearly auxiliary to the main purpose of the act. The provisions of the act relating to revenue bonds do not violate the amendment provision, since the act is complete in itself, and in no way changes existing laws. (*People* v. *Chicago Transit Authority,* 392 Ill. 77, 90 and 91; *People ex rel. Curren* v. *Schommer,* 392 Ill. 17, 27; *People ex rel. Curren* v. *Wood,* 391 Ill. 237, 256.) The mere fact that the act incorporates certain sections of the State Finance Act by reference in no way amends that act, and such practice is

free from constitutional objection. *People* v. *Lewis*, 5 Ill.2d 117, 122.

Plaintiffs also contend that the bill was not read at large on three different days in the House of Representatives. The record reveals that the circumstances of its enactment, as reflected in the legislative journal, are identical with that of House Bill 734, which was subject to the same attack in *Sangamon County Fair and Agricultural Assn.* v. *Stanard*, 9 Ill.2d 267. We there held that the parliamentary history of a bill in the legislative journal is the only evidence that is recognized in the courts of this State, and it cannot be aided or contradicted by evidence *aliunde*. Since the legislative journal discloses that the bill was read at large on three different days, that case is controlling here. We therefore hold that the form and method of passage of the act does not violate section 13 of article IV.

The argument that the act is vague and indefinite is also conclusively answered by the language of our opinion in *Sangamon County Fair and Agricultural Assn.* v. *Stanard*, 9 Ill.2d. 267.

We also feel that the authorization of suits against the Authority in no way contravenes the constitutional limitation of suits against the State contained in section 26 of article IV. Under no circumstances can the general funds of the State be reached in order to satisfy an obligation of the Authority. Independent control exists in the Authority to acquire, own, construct, lease, operate, and maintain fair and exposition grounds and facilities. These factors permit it to be regarded as an independent entity while admittedly performing public functions. Thus the Authority, as a municipal corporation, or as an agency or instrumentality of the State, is not within the traditional immunity afforded the sovereign. *People* v. *Illinois Toll Highway Commission*, 3 Ill.2d 218, 227.

The argument most earnestly urged in briefs and argu-

ment is that section 10 of the Metropolitan Fair and Exposition Authority Act violates sections 18 and 20 of article IV and sections 10 and 12 of article IX. That section of the act provides that the Authority shall have the power to borrow money and to issue therefore revenue bonds payable solely from revenues or income, "and from funds, if any, received and to be received by the Authority from the Fair and Exposition Fund, as allocated by the Department of Agriculture of this State." Section 12 of article IX contemplates that municipal corporations may levy taxes, and it provides a debt limit for such corporations of five per cent of the value of the taxable property therein. It further provides that, before or at the time of creating an indebtedness, the municipal corporation shall provide for the collection of a direct annual tax sufficient to pay both principal and interest thereon within 20 years from the time the debt was contracted. Bonds evidencing such debt may be issued pursuant to said provision and applicable statute, and become general obligations of the issuer. Since the Authority is without taxing power, (Ill. Rev. Stat. 1955, chap. 34, par. 155g13,) and its bonds are not obligations of the State or general obligations of the Authority, but rather are payable solely from the revenue and income aforementioned, we think it clear that the issuance of such revenue bonds do not constitute an indebtedness within the proscriptions of our constitution. This conclusion, based on the foregoing and further reasons, finds support in our prior decisions. (*People* v. *Illinois Toll Highway Commission,* 3 Ill.2d 218; *Loomis* v. *Keehn,* 400 Ill. 337). Neither do we believe that the Authority Act violates section 10 of article IX of the constitution by providing for the appropriation of money by the State for the purposes of a municipal corporation which performs no State functions, nor that said act violates this constitutional provision in that it permits the General Assembly to levy a tax upon

municipal corporations or the inhabitants thereof for corporate purposes.

The plaintiffs argue that section 18 of article IV is violated in that the General Assembly is under some continuing obligation to appropriate money to the Department of Agriculture for distribution to the Authority. We can find no basis for such contention in the language of the act. Under section 6i of the Illinois State Finance Act, a portion of the tax from horse race track licenses, paid into the Fair and Exposition Fund of the State, is distributable to the Authority. This tax is not imposed for corporate purposes of a municipal corporation, but rather to provide general revenue which, after receipt thereof, can be appropriated and expended for general public purposes. The corporate purposes of the Authority are general public purposes. (*People* v. *Illinois Toll Highway Commission*, 3 Ill.2d 218, 230; *Loomis* v. *Keehn*, 400 Ill. 337, 345 and 346; *Illinois Farmers' Institute* v. *Brady*, 267 Ill. 98, 102; *State Board of Agriculture* v. *Brady*, 266 Ill. 592, 599.) There is no language in the act which would constitute a pledge of a continuing appropriation of such funds, or limit the legislature in making any contrary appropriation of the race track tax. We accordingly find that the provisions in the act permitting the Authority to receive public funds for public purposes is not unconstitutional. See *People* v. *Illinois Toll Highway Commission*, 3 Ill.2d 218; *Loomis* v. *Keehn*, 400 Ill. 337.

We further hold that the delegation of the power to enact ordinances sanctioned by fines and penalties, and to conduct investigations, as provided for in sections 23 and 27 of the Metropolitan Fair and Exposition Authority Act, violates neither section 1 of article IV as an unlawful delegation of legislative power, nor article III relative to separation of powers, nor section 2 of article II, the due process clause of our constitution. Since we have held

that the Authority is a municipal corporation, it must follow that the legislature has the power to authorize it to enact such ordinances, rules and regulations as are necessary for its operation, and to enforce them with proper sanctions. (*People ex rel. Gutknecht* v. *Chicago Regional Port District,* 4 Ill.2d 363.) The legislature may likewise delegate the legislative power of inquiry to the Authority which can use the same more advantageously. *Du Bois* v. *Gibbons,* 2 Ill.2d 392, 413; *People ex rel. Barrett* v. *Logan County Bldg. and Loan Assn.* 369 Ill. 518, 527.

While the act provides no procedure for reviewing the imposition of fines and penalties, and the legislature has not placed the Authority under the Administrative Review Act, this in no way denies recourse to the courts. Section 3 of the act provides that the Authority may sue and be sued. The imposition of fines and penalties would require judicial enforcement and such action would be subject to judicial review. We find no denial of due process under the provisions of the the act. *People* v. *Illinois Toll Highway Commission,* 3 Ill.2d 218.

We also find no conflict between the Metropolitan Fair and Exposition Act and an act to authorize certain parks to lease park property to the Authority. (Ill. Rev. Stat. 1955, chap. 105, pars. 327v6 and 327v7.) The latter, in effect, amends the Chicago Park District Act, (Ill. Rev. Stat. 1955, chap. 105, pars. 333.1 *et seq.*) to permit a leasing of lands to the Authority. This is permissive and not mandatory. Two or more municipal corporations with different functions may lawfully exist in the same territory. There is no constitutional objection to the power of the legislature to authorize them to co-operate so far as co-operation is consistent with or desirable for the accomplishment of their respective purposes. (*People ex rel. Curren* v. *Wood,* 391 Ill. 237; *People ex rel. Wies* v. *Bowman,* 247 Ill. 276.) For the accomplishment of such

corporate purposes, the legislature has broad power over the control and disposition of the property of municipal corporations. (*People ex rel. Housing Authority* v. *Hursey,* 7 Ill.2d 537.) We find no conflict in the purposes of the two municipal corporations, and find nothing unconstitutional in authorizing co-operation between them.

We feel that the foregoing contentions, and others raised but not argued, have been fully answered by this opinion and our decisions in *People ex rel. Gutknecht* v. *Chicago Regional Port District,* 4 Ill.2d 363, *People* v. *Illinois Toll Highway Commission,* 3 Ill.2d 218; *Schuman* v. *Chicago Transit Authority,* 407 Ill. 313, *Loomis* v. *Keehn,* 400 Ill. 337; *People* v. *Chicago Transit Authority,* 392 Ill. 77, *Kocsis* v. *Chicago Park District,* 362 Ill. 24, and *Wilson* v. *Board of Trustees,* 133 Ill. 443. Our constitution was wisely drafted to protect our citizens from abuses of governmental authority. It furnishes a framework within which laws may be enacted. However, it was not designed to permit this court to pass judgment on the wisdom of legislative action directed to cope with current problems. It is our duty to determine if the legislature, proceeding within its limitations, has enacted legislation which is not violative of the constitutional safeguards. We find that the act under consideration is within constitutional proscriptions. The judgment and decree of the trial court must accordingly be affirmed.

*Judgment and decree affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.