(No. 37014.—

FRANKLIN B. BOWES, Appellant, *vs*. MICHAEL J. HOWLETT, Auditor of Public Accounts, *et al.*, Appellees and Cross Appellants.

*Opinion filed March 23, 1962.—Rehearing denied May 23, 1962.*

JAMES T. OTIS, of Chicago, (MACLEISH, SPRAY, PRICE & UNDERWOOD, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and AUBREY KAPLAN, Assistant Attorneys General, of counsel,) for cross appellants.

JOHN W. HUNT, of Chicago, and HAROLD G. TALLEY, of Alton, for appellees.

PER CURIAM: This is a taxpayer's action challenging the constitutionality of the Illinois Industrial Development Authority Act, (Ill. Rev. Stat. 1961, chap. 48, pars. 831-847,)

and companion legislation, enacted by the 72nd General Assembly.

Plaintiff sought to enjoin the Auditor of Public Accounts and State Treasurer from disbursing public funds and the chairman and members of the Authority from receiving or disbursing funds under the provisions of the legislation. The cause was submitted upon the complaint, the answer of members of the Authority and a stipulation of fact. The circuit court of Cook County entered a declaratory judgment pronouncing the several acts to be valid, declared the rights and duties of the defendants with respect to the transfer of general revenue money to a special fund created thereby, dismissed plaintiff's complaint and found that no just reason existed for delaying appeal.

The primary purpose of the Illinois Industrial Development Authority Act is to create employment opportunities in labor surplus areas of the State. It provides for the creation of an Authority to be governed by a body of five members. It is authorized to construct, acquire and improve industrial properties in critical labor surplus areas and to lease the properties so developed for industrial purposes. It is empowered to accept grants, loans, or appropriations from the Federal or State governments, or any of their agencies or instrumentalities. It is given authority to borrow money and issue revenue bonds or other evidence of indebtedness (subject to certain limitations) payable solely from the revenues of its industrial projects or from a fund created by the act and known as the "Illinois Industrial Development Fund."

There is a sharp conflict between the views of the Auditor of Public Accounts and State Treasurer, represented by the Attorney General, on the one hand, and the members of the Authority on the other hand. While all of the defendants contend that the act is constitutional in its general aspects, the State officers take the firm position that section 18 of the act is unconstitutional and have cross-appealed

from that portion of the judgment. Section 18 reads: "Within 1 year after the effective date of this Act, the State Treasurer and the Auditor of Public Accounts shall transfer the sum of $500,000 from the general revenue fund in the State treasury to the Illinois Industrial Development Fund created by this Act. Said sum shall be considered always appropriated for the purposes of disbursements as provided in this Act and shall be paid out and disbursed by the Illinois Industrial Development Authority only as provided herein and shall not at any time be appropriated or diverted to any other use or purpose." (Laws of 1961, p. 3159.) It seems appropriate to attack this phase of the problem first.

Section 8 of the Authority Act (Ill. Rev. Stat. 1961, chap. 48, par. 838) creates the Illinois Industrial Development Fund. This is the fund to which appropriations of the General Assembly are to be credited, together with the net proceeds from the sales of industrial projects and income from leases after deducting operational requirements. Payments into the fund are limited however, to the amount necessary to reimburse the fund to its original level. Disbursements are limited to debt service. Thus, the intent is evidenced of making the original appropriation a revolving fund to be paid out to meet the debt service on the contemplated revenue bonds, which would be replenished when funds became available. The fund is to be inaugurated by the transfer to it of $500,000 from the general revenue fund under the provisions of section 18 of the Authority Act heretofore quoted.

The question then is whether the "transfer" of $500,000 from general revenue to a special fund to guarantee payment of revenue bonds so long as any such bonds are outstanding is an appropriation and if so, is it a continuing appropriation proscribed by the constitution. If it was a pledge of credit it comes within the prohibition of section 20 of article IV, and violates section 17 of article IV which prohibits the

drawing of money except pursuant to an appropriation. It is argued, however, that the authority to transfer funds is an appropriation and that the transferring of general revenue money into the development fund, although still in the hands of the State Treasurer, is a special account or fund of the Authority rather than a special fund such as those established by the State Finance Act. We do not interpret the act as unconditionally appropriating funds and distributing them to the Authority. The $500,000 will remain in the hands of the Treasurer, a constitutional officer, (*People ex rel. Greening* v. *Green,* 382 Ill. 577,) and constitutes a continuing appropriation. This is borne out by a reading of section 18 of the Authority Act in context with the balance of the act of which it is a part. It does not contemplate the expenditure of the $500,000 within the quarter following the biennium, but at any time while revenue bonds with a 40-year maximum maturity remain outstanding. The section itself recognizes a probable lapse by stating that the funds shall be considered "always appropriated."

It is suggested that section 20 of the Illinois Toll Highways Act (Ill. Rev. Stat. 1961, chap. 121, par. 314a45) contains substantially similar language in creating the Illinois State Toll Highway Fund and that the continuing appropriation language was approved in *People* v. *Illinois Toll Highway Com.* 3 Ill.2d 218. The *Toll Highway* case is readily distinguishable. There, the moneys involved were revenues to be derived from operation of the toll road facilities. Here, our comments thus far have been addressed to the $500,000 from general revenues of the State. General revenues are those derived from the imposition of taxes, fees, and all other revenues which constitute funds of the State, (*People* v. *Sargent,* 254 Ill. 514; *Chicago Board of Trade* v. *Cowen,* 252 Ill. 554; *Green* v. *Black,* 352 Ill. 623,) as distinguished from revenues collected by an authority from members of the public who use the facilities. (*People*

v. *Chicago Transit Authority*, 392 Ill. 77; *People ex rel. Gutknecht* v. *Chicago Regional Port Dist.* 4 Ill.2d 363; *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539.) The constitutional inhibitions against pledging State credit, requirement of prior specific appropriation and provision for lapse of appropriations apply to the former but not the latter type of revenue.

We are of the opinion that the transfer or appropriation under section 18 of the Authority Act violates the constitutional prohibition against pledging the credit of the State and is clearly a continuing appropriation in violation of section 18 of article IV which provides that all unexpended appropriations shall lapse at the expiration of the first quarter after the adjournment of the next regular session of the General Assembly.

The next question is the effect upon the balance of the act after the elimination of the $500,000 appropriation. The primary source of funds contemplated by the act is through the sale of revenue bonds. The issuance of bonds payable solely from revenues derived from the use of a facility has become a popular method of municipal financing and as heretofore noted is not subject to many of the constitutional restrictions imposed upon obligations payable by taxation. See, for example, *People* v. *Chicago Transit Authority,* 392 Ill. 77; *People* v. *Illinois Toll Highway Com.* 3 Ill.2d 218; *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539.

Section 7 of the Authority Act (Ill. Rev. Stat. 1961, chap. 48, par. 837) authorizes the issuance and sale of revenue bonds in the familiar language of other acts which have received the approval of this court, except for the following significant limitation: "At no time, however, shall the Authority incur an aggregate principal amount of outstanding indebtedness which, including any new borrowing, exceeds 10 times the amount then on deposit in the Illinois Industrial Development Fund." The net effect of

this limitation, since transfer of the $500,000 to implement the fund is constitutionally impossible, is to preclude the issuance of any bonds.

While the Act contains a severability clause, we fail to see how the purpose of the act could be carried out' even though it be assumed that it is constitutional but for the appropriation feature. The legislative plan, as expressed by the legislation, is dependent upon the ability of the Authority to raise money. The removal of section 18 from the act introduces with full impact the limitation of section 7 on borrowing and thus for practical purposes renders the act ineffective in its present form.

In view of our holding it is unnecessary to consider other constitutional questions raised by plaintiff.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*