(No. 37174.—

SAMUEL S. BERGER, Appellant, *vs.* MICHAEL J. HOWLETT, Auditor of Public Accounts, *et al.*, Appellees.

*Opinion filed May 25, 1962.*

WARREN KRINSKY, of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Upon leave granted by the circuit court of Cook County, the plaintiff, Samuel S. Berger, suing as a citizen and taxpayer, filed a complaint praying for injunctive relief and for a declaratory decree that the Illinois Building Authority Act, (Ill. Rev. Stat. 1961, chap. 127, pars. 213.1 —213.14,) and a supplemental act declaring it to be in the public interest for the Authority to construct a building in Springfield for the use of the Attorney General, (Laws of 1961, p. 3373,) are unconstitutional and void. Defendants, who are the State Auditor, State Treasurer and the members of the Authority, filed a motion to dismiss the complaint for want of equity, which was allowed, and the court thereafter entered a decree declaring that the acts were not subject to the constitutional objections raised. The constitutionality of a statute being involved, plaintiff has prosecuted this direct appeal for review.

The Illinois Building Authority Act was approved August 15, 1961, and created, as a body corporate and

politic, the Illinois Building Authority. By the provisions of the act the Authority is to consist of seven members, appointed by the Governor with the consent of the Senate, none of whom may be an elected official of the State or any of its subdivisions. The stated purpose of the Authority, unquestionably a public purpose, is to build and otherwise provide hospital, housing, penitentiary, administrative, classroom, library, recreational, laboratory, office and other such facilities for use by the State of Illinois; its stated duties are to investigate and report the building needs of the State, to obtain estimates of costs and to formulate and recommend to the Governor a list of such projects.

To accomplish its purpose and duties the Authority is given certain powers by the act, among which are: To construct or acquire by purchase (including the power of condemnation) any building or facility declared by the General Assembly to be in the public interest; to lease such facilities or buildings to any department, board, commission or other agency of the State, the leases in such instances to provide that the rents shall be payable solely from appropriations to be made by the General Assembly for such purpose and from any revenue that may be derived from the leased premises. In the event of non-payment of rent by the State, the Authority is authorized to lease the building or facility to others for suitable purposes. Further, the Authority is given the power to borrow money and to issue and sell revenue bonds in such amounts as may be necessary to acquire, construct, equip, remodel or maintain a facility; to refund and refinance the same as often as advantageous and in the public interest to do so; to pledge any and all income of the Authority to secure the payment and redemption of such bonds; and to convey property, without charge, to the State of Illinois or to the appropriate corporate agency of the State if and when all debts which have been secured by the income from such property have been paid.

With reference to the bonds it authorizes, the act pro-

vides they shall be payable only from: (1) revenue to be derived from the operation of the facility acquired or built with the proceeds of such bonds, and (2) income to be derived from rental leases to State departments, boards, *etc.,* or from leases to others. Each bond is required to state on its face: (1) that it is payable solely from revenues derived from the operation of the facility, and (2) that it does not constitute an obligation of the State of Illinois within the meaning of its constitution or statutes. In still another section it is provided that the provisions of the act and of any resolution or proceeding authorizing the issuance of bonds shall constitute a contract with the bondholders, the terms of which shall be enforceable either in law or in equity, by suit, action, *mandamus* or other proceeding.

Other sections of the act having some pertinency here direct that the charges, fees or rentals established by the Authority shall be sufficient to pay interest, principal, operation and maintenance costs, and declare that nothing in the act shall be construed as authorizing the Authority or any department, board, *etc.,* to create an obligation of the State of Illinois within the meaning of its constitution and statutes.

Relying upon our decision in *People ex rel. Greening* v. *Green,* 382 Ill. 577, wherein the Illinois State Public Building Authority Act of 1941, (Laws of 1941, vol. 1, p. 1255,) was found unconstitutional and void, plaintiff contends initially that the issuance of bonds by the Authority will create a debt against the State of Illinois and, upon this basis, insists that the creation of a debt in excess of $250,000, without a referendum, causes the act to violate section 18 af article IV of the Illinois constitution. We think it sufficient to say that the later case of *Loomis* v. *Keehn,* 400 Ill. 337, upholding the validity of the Illinois Armory Board Act, conclusively resolves these contentions against the plaintiff. There, under a statute distinguishable

only on the ground that it related to a different public pur-. pose, we held that a separate corporate entity, such as the Authority in this case, does not become an arm of the State merely because it leases property to the State; that the fact that the General Assembly will appropriate money during its regular sessions to pay rent does not create a debt; and that the statutory provisions authorizing a pledge of the income and property of Authority, the sole sources to which the bondholders may look, does not create a debt against the State. This being so, any issue as to a violation of section 18 of article IV does not arise.

Some suggestion is made by plaintiff that *Loomis* v. *Keehn* is not controlling because the issuance of bonds to construct armories was justified in that case under the constitutional exception which permits State debt in excess of the $250,000 limitation where its purpose is to repel invasion, suppress insurrection, or defend the State in war. (Const. of 1870, sec. 18, art. IV.) Such an argument borders on the frivolous inasmuch as the *Loomis* opinion expressly rejected the need to rely upon such exception, and found no necessity to construe it. 400 Ill. at 343-344.

Nor, when the statutory differences are noted, does *People ex rel. Greening* v. *Green,* 382 Ill. 577, compel a finding that bonds issued by the Authority under the present act will create a debt against the State. Under the 1941 statute there being considered the governing body of the Authority was to consist of the Governor, Lieutenant Governor, Secretary of State, Treasurer, Auditor of Public Accounts, Superintendent of Public Instruction, Attorney General and a member of the Supreme Court, all elected officials of the State; thus making the Authority such a perfect shadow of the State that their obligations were indistinguishable. In the present act, by way of contrast, the membership of the Authority is not such as to either destroy or confuse its identity as a separate corporate entity. (See: Ill. Rev. Stat. 1961, chap. 127, par. 213.1) Moreover, under

the prior statute there was no limitation upon the amount which the State could be required to pay for the use of the building or facility, and the language employed by the legislature left doubt as to whether a claim was preserved against the State in the event rents were not paid. (See: Ill. Rev. Stat. 1941, chap. 127, pars. 201 thru 213.) Neither defect is true of the present act. The charges, fees or rentals to be established by the Authority are limited to amounts sufficient at all times to pay the principal of and interest on the bonds and cost of maintenance. Here the act provides that leases to the State or its agencies shall provide that the rents shall be payable from appropriations made by the General Assembly at each session for such purpose, and, in case such rental is unpaid, it is entirely clear that no claim is preserved against the State inasmuch as the Authority is given the power to lease the building or facility to others for any suitable purposes. Ill. Rev. Stat. 1961, chap. 127, par. 213.5(c); Cf. *Loomis* v. *Keehn,* 400 Ill. 337, 341.

Anticipating our decision that the Authority is, under the present act, an entity separate and apart from the State, it is next urged by plaintiff that the act and contemplated indebtedness are void under the provisions of section 20 of article IV which prohibits the State from in any manner giving aid or credit to any public corporation. As both the *Green* and *Loomis* cases point out, however, this provision of the constitution has long been construed as permitting the State of Illinois to donate money to private persons or corporations so long as the purpose for which it is expended is for the public and not private benefit. (*People ex rel. Greening* v. *Green,* 382 Ill. 577, 584; *Loomis* v. *Keehn,* 400 Ill. 337, 345; *Boehm* v. *Hertz,* 182 Ill. 154.) Assuming that the act in some way permits the State to lend its aid or credit to the Authority, the furnishing of adequate office facilities for State government is a public purpose and a proper expenditure of State funds. Cf. *People ex rel.*

*Adamowski* v. *Public Building Com. of Chicago*, 11 Ill.2d 125.

The Public Building Authority Act of 1941 authorized the bondholders to maintain *mandamus* proceedings against the Authority, (Ill. Rev. Stat. 1941, chap. 127, par. 211,) and, consistent with the view that the State and the Authority there provided for were inseparable entities, it was held in *People ex rel. Greening* v. *Green,* 382 Ill. 577, 585, that such provision violated the mandate of section 26 of article IV of the constitution which states: "The state of Illinois shall never be made defendant in any court of law or equity." The Act presently being considered gives the bondholders the right to enforce performance of the Authority by suit, action, *mandamus* or other proceeding (Ill. Rev. Stat. 1961, chap. 127, par. 213.11,) leading to a contention by plaintiff that it is subject to the same constitutional objection. This claim, as well as a complementary contention that section 19 of article II is violated if there is no remedy against the State, is founded upon the false assumption that the bonds issued by the Authority will create a debt against the State. To the contrary, as we have pointed out, the debt created is against the revenues of the property of the Authority, a corporate entity separate and apart from the State, and by the terms of the bonds themselves the bondholders may look for payment only to the income derived from the facility being operated and maintained by the Authority. It cannot therefore be said, as plaintiff suggests, that suit is impliedly authorized against the State, or that the bondholders are left without a remedy against the corporate entity having liability under the bonds.

Calling our attention to the power of eminent domain conferred upon the Authority by section 5 of the act, (Ill. Rev. Stat. 1961, chap. 127, par. 213.5(a),) plaintiff next contends the statute unconstitutionally authorizes the taking of property for private purposes. He agrees that the

taking of land for an office building for use of the Attorney General is a public use but he theorizes, with no citation of authority and a minimum of argument, that in the event of default, the property may fall into the hands of purely private purchasers. We are not impressed with this claim. The rule is well settled that the exercise of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that incidentally a private use may benefit. (*People ex rel. Adamowski* v. *Public Building Com. of Chicago,* 11 Ill.2d 125; *People ex rel. Adamowski* v. *Chicago Railroad Terminal Authority,* 14 Ill.2d 230; *People ex rel. Gutknecht* v. *City of Chicago,* 3 Ill.2d 539.) In our view, while we think the happening completely improbable, the possibility that a building could fall into the hands of a private purchaser in such a manner, before it had completely served its public purpose, is so vague and incidental a private use that it cannot be given controlling effect.

Prior to the passage of the Illinois Building Authority Act of 1961, our statute on State Government, insofar as it related to the Department of Finance, provided that it was the duty of the Department to: "Lease office and storage space for the several departments, their boards and commissions, and the administrative agencies of the state." (Ill. Rev. Stat. 1959, chap. 127, par. 35.6(b).) It is now urged by plaintiff that the Building Authority Act is in conflict with the quoted statute, although he does not say why or how, and that the act is further subject to the vice that it has amended by implication the statute relating to the duties of the Department of Finance. We find it difficult to see how such a contention can be seriously made. The 1961 legislature, at the time it enacted the Building Authority Act, itself removed any conflict between the two statutes by amending the Department of Finance statute to provide that the duty of the Department to lease office space existed "except as otherwise provided in 'An Act to create the Illinois

Building Authority and to define its powers and duties', enacted by the Seventy-second General Assembly." (Ill. Rev. Stat. 1961, chap. 127, par. 35.6(b).) Further, it has long been held that where a new law is complete in itself and entirely intelligible without reference to prior legislation, it is valid even though its effect may be to modify existing law. (*People ex rel. Rose* v. *New York Central Railroad Co.* 22 Ill.2d 266; *Aaron & Bros.* v. *McKibbin,* 392 Ill. 558.) The Illinois Building Authority Act is a separate and independent Act, complete in itself, and is thus valid even if it could be agreed that it modifies or amends the law relating to the Department of Finance.

For the reasons stated, the decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*