(No. 38916.—

PATRICIA ANN BARO, Appellant, *vs.* JOSEPH D. MURPHY *et al.,* Appellees.

*Opinion filed March 18, 1965.*

FRED P. BOSSELMAN, MICHAEL G. KADENS, and VICTOR E. GRIMM, all of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield (RICHARD A. MICHAEL, and TERRENCE F. MACCARTHY, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Patricia Ann Baro and others brought a suit for declaratory judgment to test the validity of the State Parks Revenue Bond Act (Ill. Rev. Stat. 1963, chap. 105, par. 490.01 *et seq.*) and an ordinance adopted pursuant thereto by the State Parks Revenue Bond Commission which authorizes construction of a motel and camp sites in the State parks system and provides for financing thereof by the issuance of revenue bonds. The circuit court of Cook County denied plaintiffs' motion for summary judgment whereupon plaintiffs elected to stand on their motion. In denying this motion the trial court found the State Parks Revenue Bond Act to be constitutional. Plaintiff Baro alone appeals and since a constitutional question is involved the appeal comes directly to this court.

Appellant contends the State Parks Revenue Bond Act, hereinafter called the Bond Act, is invalid and unconstitutional because it conflicts with and duplicates the Illinois Building Authority Act, and other valid statutes, and it purports to authorize the State to incur debts secured by a pledge of general revenues, contrary to section 18 of article IV of the constitution of Illinois. Appellant also insists that, even if the act is valid, the ordinance adopted thereunder by the State Parks Revenue Bond Commission is invalid because the statute does not authorize the Commission to construct facilities, but only to finance them and in any event there is no statutory authority for the construction of a motel.

Prior to 1961 the State Parks System had funds available from the operation of restaurants, inns, refreshment stands and other facilities in the State parks and from the biennial appropriations out of general revenues. This was done in such a manner that the entire State Parks Fund could be reserved for capital improvements. The funds received from concessionaires were put in the State Parks Fund and those funds were used to construct capital improvements in the parks system.

In 1961 the legislature passed the Illinois Building Authority Act (Ill. Rev. Stat. 1961, chap. 127, par. 213.1 *et seq.*) and authorized the Building Authority to construct, among other things, such recreational facilities as the legislature should declare to be in the public interest. In 1963, the legislature enacted a statute declaring it to be in the public interest for the Building Authority to construct, among other things, sewage disposal systems at several State parks and appropriated to the Department of Conservation funds to pay rentals to the Building Authority for those facilities and sites furnished to the Department. Also, in 1963, the legislature created the State Parks Revenue Bond Commission, hereinafter called the Commission, by the enactment of the State Parks Revenue Bond Act. (Ill. Rev. Stat. 1963, chap. 105, par. 490.01 *et seq.*) Under this act, the Commission is authorized to sell bonds and to pay for the acquisition and construction of recreational facilities in any of the State parks. This act has provisions that pledge as security for such bonds the revenues from all parks in the system, including revenues from existing facilities, together with revenues from the facilities to be constructed by the Commission. (Ill. Rev. Stat. 1963, chap. 105, pars. 490.05 and 490.07.) The act further provides that all revenues derived from the operation of State parks are to be placed in a trust fund called "The State Parks Revenue Bond Fund." That fund is to be used only for making payments on the bonds and the maintenance and operation costs of projects built by the Commission in such priority as the Commission provides. Revenues not needed for these purposes are used for rehabilitation and expansion of facilities or the construction of new facilities. (Ill. Rev. Stat. 1963, chap. 105, par. 490.07.) The act further authorizes the Department of Conservation to transfer jurisdiction of any property in the parks system to the Commission which may accept such transfer and is compelled

to retransfer jurisdiction to the Department when the bonds are retired. Ill. Rev. Stat. 1963, chap. 105, par. 490.08.

The legislative purpose in the foregoing statutory scheme is clearly indicated by a recent report that Illinois ranks 46th of the 50 States in recreational acreage per thousand population. While the number of campers in Illinois State parks has increased 56% from 1960 to 1963, Illinois is without a modern family camp or camping service buildings. Former methods of financing recreational improvements through the State Parks Fund have proved to be insufficient. Similar problems have recently induced Pennsylvania, Ohio, New York and New Jersey to adopt some form of park recreational bonding legislation. To meet the growing need for improved methods of financing recreational facilities, the present act was passed.

Plaintiff, however, claims that the legislature's attempt to solve this problem resulted in an unconstitutionally vague statute which is in conflict with other valid legislation, and with other legislatively created agencies. Plaintiff argues that the present Bond Act creates confusion in the management, financing, jurisdiction and construction in the State parks system, between the Authority created by the Bond Act and the State Boating Act Fund, the Game and Fish Fund, the State Parks Fund, the Illinois Public Building Authority, and the Department of Conservation.

With this we do not agree. The three funds mentioned are established by the State Finance Act. (Ill. Rev. Stat. 1963, chap. 127, par. 141.) As to the Boating Fund and the Game and Fish Fund, the Boat Registration and Safety Act (Ill. Rev. Stat. 1963, chap. 95½, par. 311—1 *et seq.*) and the Game Code (Ill. Rev. Stat. 1963, chap. 61, par. 135 *et seq.*) provide for payment into the Boating Fund and the Game and Fish Fund, respectively, of moneys collected pursuant to said acts, which are registration, licensing and regulation enforcing statutes. It is clear that the present

Bond Act includes only fees, charges and rentals received for use of facilities of the park and not license fees for boating and fishing. The licensing revenue payable to the Boating Fund and the Game and Fish Fund is in no way affected by the Bond Act. The monies channeled directly into the State Parks Revenue Bond Fund (which exclude the Boating Fund and the Game and Fish Fund) are not general revenue. These specific monies are deposited with the State Treasurer as treasurer for the Commission rather than as custodian of the general revenue of the State.

In regard to the State Parks Fund, section 4(c) of the State Parks Act, (Ill. Rev. Stat. 1953, chap. 105, par. 468.3), provided for "all income" realized from the operation of State parks to be paid into the State Parks Fund. However, in order to avoid a conflict with the present Bond Act, the legislature in 1963 amended section 4(c) to provide that all income realized from the operation of State parks shall be paid into the State Parks Fund, except for income derived from the operation of State parks which is required to be deposited in the State Parks Revenue Bond Fund pursuant to the State Parks Revenue Bond Act. This amendment clearly resolves any conflict between the State Parks Act and the present Bond Act.

We also see no fatal conflict between this Bond Act and the Illinois Building Authority Act. (Ill. Rev. Stat. 1963, chap. 127, par. 213.1 *et seq.*) The expressed purpose of the Building Authority Act is to study the need for, recommend and build various facilities for State use, including, *inter alia,* recreational facilities. However, the Building Authority has no power to construct a facility until the General Assembly, by law, declares such facility to be in the public interest. Ill. Rev. Stat. 1963, chap. 127, par. 213.5.

The scope of purpose of the present Bond Act deals only with recreational facilities, but in that special area, the State Parks Commission is not limited to constructing projects specifically declared to be in the public interest by the

legislature. If a facility is constructed by the Building Authority, it must be leased to the State or a State agency, while a facility constructed by the State Parks Commission is retained by it, and income is derived from facility use by the public.

While both the Building Authority and the Commission have powers in the area of recreational facilities, this is not offensive to our constitution. There are many situations in which it is reasonable for the legislature to exercise similar powers within the same area. *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539, 544; *Maulding* v. *Skillet Fork River Outlet Union Drainage Dist.* 313 Ill. 216, 223.

We see in the two statutes before us no present conflict, nor any real potential for future conflict, since the legislature need not permit the Building Authority to construct recreational facilities. Indeed, plaintiff's argument in this regard was fully disposed of in *People ex rel. Touhy* v. *City of Chicago,* 399 Ill. 551, 557, where the court stated:

"The next contention of appellant is that the Blighted Areas Act is void because it attempts to vest in Land Clearance Commissions powers coextensive with those already held by the city of Chicago for the same purpose, (*i.e.,* slum clearance,) and extending over the same district. As pointed out in *People ex rel. Greening* v. *Bartholf,* 388 Ill. 445, the application of this principle has usually been made in cases involving the validity of tax levies and cases involving the jurisdiction of separate corporate bodies. Since the Land Clearance Commissioners have no power to levy taxes, we are not concerned with that issue here. As to jurisdiction, this court has recognized that, in our complex system of government, different public authorities exercise within parts of the same territory practically similar powers. (*People* v. *Bartholf,* 388 Ill. 445; *People ex rel. Darnell* v. *Woodward,* 285 Ill. 165; *Wilson* v. *Board of Trustees of Sanitary Dist.,* 133 Ill. 443.) It was said in the *Bartholf* case, on page 466, that: 'This power and authority must

be exercised in a particular way by these different public authorities so as not to bring different municipalities into conflict in doing the same identical work for the same sections.' It is true that the Land Clearance Commission is given powers to promote slum clearance by the Blighted Areas Act, which are similar to the powers given to the city of Chicago by the Revised Cities and Villages Act, (Ill. Rev. Stat. 1947, chap. 24, pars. 23—1 *et seq.*), and the areas of their jurisdiction are coterminus, however, the sites in which the Land Clearance Commissioners are to operate must be approved by the city council of Chicago and by the State Housing Board. It is inconceivable that both corporations would enter into a program of slum clearance by which one would be duplicating the work of the other. There is no duplication of taxes in the area, and a reasonable application of both acts will eliminate duplication of effort by the two municipalities. We are of the opinion that the Blighted Areas Act is not subject to this objection of appellant."

Nor is there any conflict created between the Commission and the Department of Conservation. While the Department is given, in the first instance, "care, control, supervision and management of all State parks," (Ill. Rev. Stat. 1963, chap. 105, par. 465), it is also authorized with approval of the Governor to transfer its jurisdiction of any property to either the Building Authority, (Ill. Rev. Stat. 1963, chap. 127, par. 213.4), or to the Commission. (Ill. Rev. Stat. 1963, chap. 105, par. 490.08.) It is well settled that the jurisdiction of an agency may be transferred or changed at the pleasure of the legislature. *People* v. *Chicago Transit Authority,* 392 Ill. 77; *Mitchell* v. *Lowden,* 288 Ill. 327.

Without considering the wisdom of the State Parks Revenue Bond Act, (*Thillens, Inc.* v. *Morey,* 11 Ill.2d 579,) we conclude that it is a valid addition to the State park system, and does not conflict with other legislation.

Plaintiff next contends that the Bond Act violates the prohibitions of section 18 of article IV of the constitution of Illinois. That section prohibits continuing appropriations, and the creation, without referendum, of a debt of the State in excess of $250,000.

Section 2 of the Bond Act provides for the issuance of bonds up to $9,000,000 at any one time, and contemplates the retirement of the bonds from the entire revenue of the State parks system. Section 5 states that "The bonds shall not in any event constitute a debt of the State or of the Commission within any statutory or constitutional limitation." Despite this declaration of intention, the issue of whether the bonds constitute a debt of the State contrary to the terms of the constitution is a judicial question which we must face. *People ex rel. City of Chicago v. Barrett,* 373 Ill. 393.

The question before us is whether or not the funds designated for retirement of the bonds are those "belonging to the State." We have consistently upheld statutes providing for bonds to be retired from a special fund consisting of revenue and income collected by an authority or agency from the use of its facilities. *People ex rel. Coutrakon v. Lohr,* 9 Ill.2d 539, 552; *People v. Illinois Toll Highway Com.* 3 Ill.2d 218, *Loomis v. Keehn,* 400 Ill. 337.

A further question in this area arises under subparagraph (h) of section 6 of this act, (Ill. Rev. Stat. 1963, chap. 105, par. 490.06,) which provides for charges for use of the facilities which will be "sufficient together with other available money to produce revenue adequate to pay the bonds at maturity and accruing interest and reserves therefor, and sufficient to pay the cost of maintenance and operation thereof in such order of priority as shall be provided by the ordinance authorizing the bonds." Literal interpretation of this section by the Commission as empowering the giving of priority to revenue bond debt charges over maintenance and operation would not only be contrary to other revenue

bond statutes which provide, without exception, for priority of maintenance and operation, (See e.g. Building Authority Act, Ill. Rev. Stat. 1963, chap. 127, par. 213.9,) but would raise grave constitutional questions. It will be the duty of the Commission to operate and maintain the facilities in order that revenues be produced with which to pay the principal of and interest on the bonds, so that if priority be given to the debt service and there is insufficient income to pay both the debt service and the cost of maintenance and operation, the latter would in effect be pledging the State's credit in contravention of section 20 of article IV of the constitution.

"It is our duty so to interpret the statute as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity." *People* v. *Nastasio*, 19 Ill.2d 524, 529.

In this case only a preliminary ordinance has been adopted which provides very briefly for the construction of park improvements and the financing of same by the issuance of revenue bonds "as provided in and by said Senate Bill No. 862." We must assume that the Commission will act legally and that the bond ordinance will provide priority for maintenance and operation.

Plaintiff, however, points out that this Bond Act purports to pledge revenues not only from facilities hereafter constructed by the Commission, but from all facilities of the State parks system including those heretofore constructed. We have upheld the power of the legislature to divert revenues, other than taxes and fees of State officers to a special use, and to eliminate them from the State Treasury. (*Green* v. *Black*, 352 Ill. 623, 627.) In the present act it is clear that no taxes or fees of State officers are involved, but other revenues of the park system, previously funneled into the State Treasury are now diverted into the special fund. This procedure was considered and approved by the court in *Poole* v. *City of Kankakee*, 406 Ill. 521. In

the *Poole* case a municipal ordinance provided for the issu
ance of bonds to defray the cost of building off-street park-
ing facilities and pledged in addition to the revenue to be
produced by the new parking facilities the revenue from
existing parking meters. It was argued that a municipality
had no right to pledge the income of parking meters already
installed as security for payment of bonds to provide for
new facilities. This court said at page 534 : "Considering the
Parking Act as a whole, it is apparent that the legislature
had the entire parking system of a city under consideration
and not just the separate facilities which would be required.
To say that the parking system should be broken down into
isolated parts for financing and disposal of revenue is in-
consistent with the public purpose of the act, *i.e.,* the orderly
control and regulation of traffic. The language employed in-
dicates the legislature intended that, where necessary, a city
could, within its discretion, pledge the revenues from 'any or
all' of its parking facilities for the purpose of maintaining,
extending or improving the over-all uniform parking
system."

The court went on to hold that such a pledge of revenues
from existing facilities did not create a debt of the city
within the meaning of the constitution of Illinois. While a
city ordinance rather than a legislative act was involved, a
city could only adopt an ordinance pursuant to a valid power
granted by the legislature. Nor do we believe the fact that
the *Poole* case involved the constitutional debt limit of the
city rather than that of the State renders the decision in-
applicable. We adhere to the reasoning expressed in *Poole,*
and hold that a pledge of future revenues from the use of
all the park system facilities does not constitute an appropri-
ation of tax monies or the creation of a debt of the State.
*Simpson* v. *City of Highwood,* 372 Ill. 212, 221 ; *Ward* v.
*City of Chicago,* 342 Ill. 167, 174 ; *Maffit* v. *City of Decatur,*
322 Ill. 82.

Appellant's contention that the authorization of suits

against the Commission contravenes section 26 of article IV of the constitution of Illinois, which provides that the State shall not be sued, has been repeatedly and conclusively rejected by this court on the ground that an agency or instrumentality of the State, such as this Commission, is not within the traditional immunity afforded the sovereign. *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539, 551; *People* v. *Illinois Toll Highway Com.* 3 Ill.2d 218, 227.

. The argument that the provision of the act making the Governor an *ex officio* member of the Commission violates section 5 of article V of the State constitution providing that the Governor shall not be eligible to hold any other office during his term, was also disposed of in *People* v. *Illinois State Highway Com.* 3 Ill.2d 218, 223, where we held that the legislature might properly impose additional duties upon constitutional officials without the creation of a separate office within the meaning of the constitution.

Having carefully examined the many constitutional arguments raised by appellant, we feel that the present statute is not within the proscriptions therein contained.

Finally, appellant contends that the Bond Act, even if valid, does not empower the Bond Commission to enact its ordinance providing for the construction of a motel in the State Parks System. Plaintiff first argues that the Bond Act provides only for financing and does not provide for construction of facilities. With this argument we cannot agree. Section 2 of the Bond Act provides in part as follows: " 'Project' shall mean, in whole or in part, the acquisition of land, buildings, the acquisition or construction or reconstruction of any buildings, piers, docks or other works, including installation of lighting, heating, sanitary and water facilities, together with incidental aproaches, structures, furnishings, equipment and facilities, reasonably necessary and useful in order to provide and maintain existing, new or improved recreational facilities." This pro-

vision, together with other sections of the act, make it clear that the Commission has the power to construct projects or facilities to carry out the provisions of the act. We also must reject plaintiff's argument that the construction of a motel is not authorized because it is essentially different from lodges and cabins which are specifically mentioned in the statute. Although appellant's argument may be ingenious, we think that a fair reading of the act clearly permits construction of such a facility.

We, therefore, conclude that the arguments of appellant are without merit, and the judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*