45 Ill.2d 243 (1970)
258 N.E.2d 569
ROSEMONT BUILDING SUPPLY, INC., et al., Appellants,
v.
ILLINOIS HIGHWAY TRUST AUTHORITY et al., Appellees.
No. 42765.
Supreme Court of Illinois.
Opinion filed March 24, 1970.
Rehearing denied May 26, 1970.
*244 *245 SAMUEL J. BETAR and JOSEPH A. LAMENDELLA, both of Chicago, (SCHIPPERS, BETAR, LAMENDELLA & O'BRIEN, of counsel,) for appellants.
WILLIAM J. SCOTT, Attorney General, of Springfield, (PERRY L. FULLER, DOUGLAS M. REIMER, and D. KENDALL GRIFFITH, Special Assistant Attorneys General, of counsel,) for appellees.
NORMAN J. BARRY and M.I. MISHKIN, both of Chicago, and GORDON C. ADLER, of Bloomington, (ROTHSCHILD, STEVENS, BARRY & MYERS, and MERKER AND ADLER, of counsel,) for amicus curiae Illinois Agricultural Association.
Judgment reversed.
Mr. JUSTICE CULBERTSON delivered the opinion of the court:
Rosemont Building Supply, Inc., and James Cuzzone, plaintiffs, initiated this taxpayers' action in the circuit court of Du Page County to challenge the constitutionality of the Illinois Highway Trust Authority Act, (Ill. Rev. Stat. 1969, ch. 121, par. 101-1 et seq.,) which went into effect July 10, 1969. Named as defendants were the Illinois Highway Trust Authority, the Governor and various other State officials. A summary judgment finding the act to be constitutional was entered for defendants and plaintiffs have appealed. On leave granted, the Illinois Agricultural Association, which also adopts the theory that the act is invalid, has filed a brief as amicus curiae.
The act in question created the Illinois Highway Trust Authority as a body politic and corporate to function as a governmental corporation for a stated purpose of "constructing, reconstructing, improving, equipping, and furnishing State highways, bridges, viaducts, interchanges and roadside rest areas," any and all of which purposes or undertakings *246 are subsequently referred to in the act as "projects." (Ill. Rev. Stat. 1969, ch. 121, par. 101-4.) And while not entirely clear, the act apparently contemplates that the Authority may take over highway projects already planned or partially completed by the Department of Public Works and Buildings inasmuch as subparagraph (e) of section 4 permits the Authority: "To acquire projects from the Department by purchase or otherwise, and to construct, improve, equip, and furnish projects." By the provisions of section 3 (par. 101-3) the Authority consists of three members appointed by the Governor with the advice and consent of the Senate, one of whom is designated chairman by the Governor. By implication, the salaries of the members are to be paid by the Authority.
To permit the corporate purposes to be accomplished, subparagraph (d) of section 4 empowers the Authority: "(d) To acquire under agreement with the Department of Public Works and Buildings, State highways, bridges, easements or rights of way necessary or desirable for carrying out the purposes of the Authority and (without limitation of the foregoing) to lease as lessor to the Department of Public Works and Buildings any project at any time constructed or made available for public use by the Authority, and any property, real, personal, or mixed, tangible or intangible, or any interest therein, at any time acquired by the Authority. Such leases may be entered into contemporaneously with any financing to be done by the Authority and payments under the terms of such leases shall begin at any time after execution of any such leases. Such leases shall contain the provision that rents under the leases shall be payable solely from appropriations to be made by the General Assembly from the Road Fund and any revenues derived from the operation of the leased premises. In the event of nonpayment of rents reserved in such leases the Authority shall maintain and operate such facilities or projects, or execute leases thereof to others for any suitable *247 purposes." Complementing provisions of section 13 (par. 101-13) authorize the Department, with the approval of the Governor, to contract with the Authority to lease projects being constructed and, upon completion, to enter into leases for the use of a project for a term not to exceed 30 years.
Subparagraph (h) of section 4 gives the Authority power to "fix, alter, charge and collect rates, rentals and other charges" for the use of its facilities or projects "at rates to be determined by agreement or otherwise," for the purpose of providing payment of the expenses of the Authority, the payment of principal and interest on the bonds or other obligations of the Authority, and the costs of construction, improvement, repair, equipping and furnishing its facilities or properties. A concluding sentence of the subparagraph provides: "However, the Authority is not empowered to charge tolls for the privilege of vehicular or other traffic usage of a Project as defined in Section 2 of this Act except in the event of non-payment of rents reserved in lease agreements with the Department."
The Authority is given no power to tax, but to provide the funds necessary to permit its purposes, or projects, to be accomplished is empowered by subparagraph (i) of section 4: "To borrow money, make and issue negotiable notes, bonds and other evidences of indebtedness or obligations (herein called `bonds') of the Authority, not exceeding $2,000,000,000 in the aggregate, and not exceeding a total of $1,000,000,000 in the first 4 years after the effective date of this Act, for the acquisition, construction, reconstruction and improvement of highway projects in such amounts as to defray the ordinary and contingent expenses of the Authority, and in such amounts as necessary for defraying the cost of such projects and to secure the payment of such bonds, or any part thereof, by pledge or deed of trust of all or any of its revenues, rentals and receipts, and to make such agreements with the purchasers or holders of such bonds or with others in connection with any such bonds, whether issued *248 or to be issued, as the Authority shall deem advisable and, in general, to provide for the security of said bonds and the rights of the holders thereof." Ensuing subparagraphs permit the Authority to borrow money or accept grants from any Federal agency (par. 101-4(1)); to pledge or encumber all revenues and receipts of the Authority as security for its obligation (par. 101-4(m)); and it is expressly provided in subparagraph (n) that the obligations and debts of the Authority shall not be deemed to be obligations of the State or any of its political subdivisions.
Section 6 (par. 101-6) has to do with the terms of the bonds the Authority issues, which must mature in a period not exceeding 30 years and may bear interest at a rate not in excess of 7% per annum, while section 7 (par. 101-7) sets forth the rights and remedies of the bondholders. It is the purport of subparagraph (a) of section 6 that the obligation of the Authority on its bonds may be restricted "to all or any of the rentals or receipts of the Authority from all or any projects or properties." (Emphasis added.) Noteworthy in light of the emphasized words are the provisions of subparagraph (j) of section 4 which give the Authority power: "To convey property, without charge, to the State of Illinois if and when all debts, which have been secured by the income from such property, have been paid."
Other sections of the act having some pertinency to the principal issue raised here are: Subparagraph (j) of section 2 (par. 101-2(j)) wherein the terms "equipment," "facilities" and "furnishings" as used in the Act are defined as including "any equipment and furnishings whatsoever as may be deemed desirable and required by the Department of Public Works and Buildings for the use of such project"; the direction in subparagraph (n) of section 4 that: "The Authority shall cooperate with the Department in the preparation of plans and specifications for any project;" section 5 (par. 101-5) which permits the Authority and the Department of Public Works and Buildings to enter into agreements *249 for mutual co-operation in the use of employees, equipment and services incidental to the construction, maintenance and operation of projects; section 14 (par. 101-14) which provides that whenever additional land or interests in land are required by the Authority for its corporate purposes, "the Department of Public Works and Buildings, with the approval of the Governor, shall have power and authority to acquire such lands by purchase or condemnation, in the name of the State of Illinois"; and section 15 (par. 101-15) authorizing the Authority to provide by rule that construction bids may be submitted to the Department of Public Works and Buildings as agent for the Authority.
As the first of numerous constitutional objections plaintiffs contend that the $2,000,000,000 in bonds to be issued by the Authority will in fact create a debt against the State, thus causing the act to violate the provisions of section 18 of article IV of the Illinois constitution which prohibits the State from incurring a debt in excess of $250,000 unless the law authorizing the excess has been submitted to the people at a general election and shall have received a majority of the votes cast. (See Mitchell v. Lowden, 288 Ill. 327; People ex rel. City of Chicago v. Barrett, 373 Ill. 393.) And although section 4 of the Act expressly provides that obligations of the Authority are not to be deemed the obligations of the State, this self-serving declaration is not conclusive. Determination of whether the bonds constitute a debt against the State within the proscription of the constitution is a judicial function, rather than a legislative matter. (Baro v. Murphy, 32 Ill.2d 453.) On this score, the parties agree that if the obligation is in fact a debt of the State, the act is invalid in its entirety.
Plaintiffs argue broadly that the Authority is not a separate and independent entity, but is in reality a mere alter ego of the State with the result that the obligations of the Authority are indistinguishable from those of the State. *250 (See People ex rel. Greening v. Green, 382 Ill. 577.) An analysis of the act gives support to this contention. Prior to the enactment of the statute under consideration exclusive authority to construct, improve, maintain and repair State highways, with the exception of toll highways, had been conferred by the legislature upon the Department of Public Works and Buildings, as was the authority to construct rest areas. (See Ill. Rev. Stat. 1967, ch. 121, art. 4.) By the present act it appears that the legislature sought to divert to the Authority the function of "constructing, reconstructing, improving, equipping and furnishing State Highways, bridges, viaducts, interchanges and roadside rest areas." However, the curtain separating the Authority and the Department in the performance of these functions is gossamer at best.
No express provision is made as to who will select or designate the particular projects to be undertaken by the Authority, but the clear implication is that the decision of the Department will control. Subparagraph (e) of section 4 permits the Authority to "acquire projects from the Department by purchase or otherwise," while a later provision of the section directs that: "The Authority shall cooperate with the Department in the preparation of plans and specifications for any project." In addition, subparagraph (j) of section 2 defines "equipment," "facilities" and "furnishings" as meaning "whatsoever as may be deemed desirable and required by the Department of Public Works and Buildings." Similarly, the act gives the Authority no power to maintain or repair the highways it will construct, but provides in section 5 that the Authority and the Department may enter into "agreements providing for mutual cooperation between them in the use of employees, equipment and services incidental to the construction, maintenance and operation of projects." Leaving little doubt that maintenance and repair will in fact be accomplished by the Department is the circumstance that, two days before the Illinois Highway *251 Trust Authority Act became effective, article 4 of the Illinois Highway Code was amended by adding section 4-409 to authorize the Department to "enter into a written contract with any other highway authority for the maintenance, administration, engineering or improvement of any highway or portion thereof." Ill. Rev. Stat. 1969, ch. 121, par. 4-409.
Subparagraph (d) of section 4, as previously noted, permits the Authority to acquire under agreement with the Department any State highways, bridges, easements or rights of way necessary or desirable for carrying out the purposes of the Authority, and if additional lands or interests in land are required, it is the purport of section 14 that they will, with the approval of the Governor, be acquired by the Department by purchase or condemnation in the name of the State of Illinois. Further cementing the nexus between the Authority and the Department is the provision of section 15 which allows the Authority to provide by rule that bids on its projects may be submitted to the Department as agent for the Authority.
Based upon the entire statutory scheme in general, and the specific sections referred to in particular, it is our opinion that, insofar as the functions to be performed are concerned, the act does little more than to set up the Authority as a figurehead through which the Department of Public Works and Buildings will continue to administer the actual construction, improvement and maintenance of State highways as it has in the past.
We likewise believe it apparent, as plaintiffs assert, that the financial structure of the Authority cannot be found to be independent of the State. Arguing for the validity of the act in this respect defendants place great reliance upon the decisions of this court which have upheld comparable statutes, creating comparable governmental corporations with comparable financial structures, in the face of the same constitutional attack. Chief among them are Loomis v. *252 Keehn, 400 Ill. 337, wherein the State Armory Board was created for the purpose of building armories, and Berger v. Howlett, 25 Ill.2d 128, wherein the statute created the Illinois Building Authority to build or otherwise provide hospital, housing, penitentiary, administrative, classroom, library, recreational, laboratory and other such facilities for use by the State of Illinois. In each instance, as in the pressent, the governmental corporations were authorized to issue bonds to accomplish their building purposes, and it was the statutory scheme that the bonds and obligations would be retired from rentals derived from leasing the buildings erected to the State of Illinois. Also, as in the present act, the statutes there under consideration provided that in the event of the non-payment of rents by the State, the governmental corporations could lease its buildings to others for suitable purposes. We held in each case that the governmental corporations were financially independent of the State and that section 18 of article IV of the constitution was not violated, the ratio decidendi being that the State did not become liable for the debts and obligations of the corporations merely because it paid rent for the use of their buildings, and that a pledge of the income or property of the governmental corporations did not create a debt against the State or obligate it to pay the bonds secured by the income. At the root of both determinations were the statutory provisions which manifested that no claim for rents was preserved against the State in the event of its nonpayment of rents, inasmuch as the corporations were authorized to rent their buildings to others for suitable purposes in such event. Defendants, quite naturally, insist that the same conclusions must be reached in this case.
Although the Loomis and Berger decisions appear on the surface to be persuasive, particularly in light of the statutory provisions common to this case, it is our opinion that the present act, in its operation and application, does not permit a conclusion that the financial structure of the Authority is *253 independent of the State. In our view a claim will necessarily be preserved against the State if it should in fact default in its rentals, and this is so despite the language of the act which permits the Authority in such event to lease its "facilities and projects" to others for suitable purposes. (Ill. Rev. Stat. 1969, ch. 121, par. 101-4(d).) The statutes involved in Loomis and Berger contemplated that the governmental corporations created would construct buildings and lease them to the State. And in the event of the nonpayment of State rentals before the bonds and other obligations of the corporations were retired, the provisions of the statutes which authorized the corporations to lease to others for suitable purposes could be realistically applied to provide an independent source of income and rentals with which the corporations could discharge their obligations. Common knowledge and experience dictates not only that buildings erected with State use in mind could be adapted to the "suitable purposes" of others, but that "others" could be found to lease such buildings. Armories, subject to appropriate zoning, could be suitably utilized for warehousing, light industry, wholesale or retail marketing and the like, and it goes without saying that office buildings, hospitals, housing and other structures within the purview of the Illinois Building Authority Act, (Berger,) would have an available market and be suitable for the purposes of others.
Under the present Act, by way of extreme contrast, the Authority will construct, reconstruct and improve "State Highways, bridges, viaducts, interchanges and roadside rest areas," the very nature and purpose of which, with the possible exception of rest areas, decry the notion that they may be rented to others for suitable purposes. It is a basic principle of our law that the rights acquired by the State in a public highway are held in trust for the public, (32 I.L.P., Roads and Bridges, § 101,) and it has been held that the legislature may neither divert highways to some use for which they were not intended, (Cicero Lumber Co. v. Town *254 of Cicero, 176 Ill. 9,) nor grant rights and privileges therein which are inconsistent with the public use thereof. (Peoples Gas Light and Coke Co. v. City of Chicago, 413 Ill. 457.) Further, as pointed out in Chicago and Eastern Illinois Ry. Co. v. Road District No. 10, 353 Ill. 160, 165, where a public highway has been established by public authority or by prescription or use, it remains such until vacated by the public authorities, or abandoned. In our opinion, a lease of State highways by the Authority is alien to these concepts, and the attempt of the act to set forth a scheme whereby no claim would be preserved against the State in the event of a nonpayment of rents is illusory when applied to State highways and their necessary appurtenances. Should the Authority be abolished, or should its financing be inadequate, the actuality of the State's ownership of the roads and its obligation to pay for them would, we believe, be immediately apparent. We cannot say, therefore, that the leasing over provisions of the present act give the Authority the financial autonomy which similar provisions produced in Loomis and Berger.
Defendants seem to tacitly agree that State highways may not be properly leased to others by the Authority, inasmuch as they argue that such a construction produces an absurd result, and contend that a proper construction discloses a legislative intent that only rest areas could be so leased. But the plain meaning of the words employed by the legislature, to which we must adhere in the absence of any ambiguity, (Lindley v. Murphy, 387 Ill. 506,) do not permit the construction defendants urge. Making it clear that the power to lease extends to any or all of the "projects" undertaken by the Authority is the language of subparagraph (d) of section 4 which states: "In the event of nonpayment of rents reserved in such leases [with the Department] the Authority shall maintain and operate such facilities or projects, or execute leases thereof, to others for any suitable purposes." (Emphasis added.)
*255 For the reasons stated, it is our opinion that the Authority possesses neither the administrative nor financial autonomy necessary for it to be considered a self-operating and self-sustaining governmental corporation independent from the regular State government. Rather, under the terms of the statute and their necessary application, it is a mere extension of the Department of Public Works and Buildings and is financially dependent upon the State with or without the lease arrangement contemplated by the act. Under the circumstances, the obligations of the Authority must be deemed to be the obligations of the State and section 18 of article IV of our constitution is violated.
We are not unaware of the proviso appended to subparagraph (h) of section 4, (the section giving the Authority to fix and charge "rates, rentals and other charges" for use of its facilities,) which ordains: "However, the Authority is not empowered to charge tolls for the privilege of vehicular or other traffic usage of a Project defined in Section 2 of this Act except in the event of nonpayment of rents reserved in lease agreements with the Department." But, in our opinion, this provision cannot be given the effect of causing the Authority to be a financially independent entity in the event the State should default in its rents. (Cf. People v. Illinois Toll Highway Com., 3 Ill.2d 218; Baro v. Murphy, 32 Ill.2d 453, where bond obligations of governmental corporations completely payable from tolls or charges paid by the public were held not to create a debt against the State.) It is stated in 82 C.J.S., Statutes, § 381 (4), that "A proviso which is repugnant to the body or purview of the statute, and cannot be reconciled therewith, is generally considered to be inoperative and void;" and we believe this principle has application here. Our legislature has distinguished between toll highways and State highways whose use by the public has been traditionally free, and at the time the present act was adopted there was already in existence a Toll Highway Commission, (Ill. Rev. Stat. 1967, ch. 121, *256 par. 314a26 et seq.;) and a Toll Highway Authority (Ill. Rev. Stat. 1967, ch. 121, par. 100-1 et seq.,) for purposes of constructing and operating highways to be funded exclusively from tolls received from the users. The present act does not purport to create yet another toll authority or toll system. Indeed, tolls are not defined; no provision is made for a revision of tolls to adjust to needs; and no provision is made for the construction of facilities to collect them. (Cf. Ill. Rev. Stat. 1967, ch. 121, pars. 313a27(d), 314a33, and 314a34, and 100-2(c), 100-10 and 100-11.) Rather, its purport is that the Authority will construct, reconstruct and improve State highways, and that the obligations incurred therefor will be met by leasing the highways to the State. In our view, the proviso in question is repugnant to, and inconsistent with, the purport and purview of the entire Act and is therefore inoperative. Plaintiffs next contend, and we find correctly so, that the act is so vague, indefinite and uncertain as to deny due process of law, and that it improperly delegates the legislative authority to an administrative body in violation of article III of the Illinois constitution. It cannot be doubted that the legislature has the primary function of constructing, maintaining and operating public highways, and it may be conceded that it may, subject to constitutional limitations, delegate its responsibility and powers to others. And in seeking to measure the validity of the present act, or delegation, we must be guided by the fundamental principles which were stated in Krebs v. Thompson, 387 Ill. 471, 477, as follows: "An act, to be valid, must not be vague, indefinite and uncertain. It must be complete when it leaves the legislature and be sufficiently explicit to advise everyone what his rights are under the act and how he will be affected by its operation. [Citation.] Statutes which are so incomplete, vague, indefinite and uncertain that men of ordinary intelligence must necessarily guess at their meaning and differ as to their application, have uniformly been declared unconstitutional as denying *257 due process. [Citations.] It must be regarded as long settled in this State that an act, to be valid, must be complete when it leaves the legislature. If it leaves to a ministerial officer the definition of the thing to which it shall apply, such definition not being commonly known, it is invalid as an unwarranted and void delegation of legislative power to an administrative officer. [Citations.]" In the latter regard, there is a distinction between delegation of true legislative power and delegation of subordinate authority to execute the law, and while the legislature may not divest itself of its proper function of determining what the law shall be, it may authorize others to do those things which it might properly do, but cannot do understandingly or advantageously. People ex rel. Stamos v. Public Building Com. of Chicago, 40 Ill.2d 164; Hill v. Relyea, 34 Ill.2d 552.
As previously pointed out in greater detail, one provision of the Act here being considered purports to empower the Authority to lease its projects to others for suitable purposes in the event of the nonpayment of rentals by the State, (par. 101-4(d),) while a subsequent provision, (par. 101-4 (h),) purports to permit the Authority to charge vehicular tolls for the use of its projects upon the occurrence of the same event. Assuming that both provisions are otherwise valid, it is our opinion that their effect is to cause an unlawful delegation of the legislative authority. The choice of what the law shall be, a leasing to others or the charging of tolls, is left to the Authority. We also believe that both provisions, whether considered in concert or separately, create such indefiniteness and uncertainty as to cause the act to deny due process of law. Neither bondholder nor taxpayer can know what their rights will be or how they will be affected by the operation of the act in the event the State would default in its lease obligation, and they could not know those things until the Authority exercised the apparent choice it is given to lease its projects to others, or to collect tolls for their use. In addition, both provisions are vague, *258 indefinite and uncertain when standing alone. As to the first, the very nature, use and ownership of the Authority's projects produces uncertainty that they may in fact be leased to "others" for "suitable purposes"; as to the second, the complete failure of the act to define tolls or to provide for their revision and collection renders the meaning of the provision indefinite and uncertain.
In our opinion, and for the reason stated, the act is unconstitutional in its entirety making it unnecessary to consider further constitutional objections plaintiffs have raised. Accordingly, the judgment of the circuit court of Du Page County is reversed.
Judgment reversed.