NORTH PARK PUBLIC WATER DISTRICT, Plaintiff-Appellant, v. THE VILLAGE OF MACHESNEY PARK, Defendant-Appellee.

Second District   No. 2—90—0485

Opinion filed December 18, 1990.

Robert A. Fredrickson and H. Emmett Folgate, both of Reno, Zahm, Folgate, Lindberg & Powell, of Rockford, for appellant.

Joseph L. Long and Thomas A. Green, both of Barrick, Switzer, Long, Balsley & Van Evera, of Rockford, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, the North Park Public Water District (the Water District), appeals from the entry of summary judgment in favor of defendant, the Village of Machesney Park (the Village). The circuit court of Winnebago County found that the Village is not legally obligated to reimburse the Water District for the cost of relocating its water mains and valve boxes in order to accommodate street improvements undertaken by the Village.

The issues raised on appeal are whether the Water District possesses an easement under the Village's roads pursuant to section 9 of "An Act in relation to public water districts" (hereinafter the Water District Act) (Ill. Rev. Stat. 1989, ch. 111⅔, par. 196) and whether the Village is required to reimburse the Water District for the cost of relocating its lines to accommodate improvements to the Village's right-of-way.

The Water District is a public agency organized under the Water District Act (Ill. Rev. Stat. 1989, ch. 111⅔, par. 188 et seq.). Pursuant to section 9 of the Water District Act, the Water District has water mains, valve boxes, and other distribution facilities within the Village's corporate boundaries and beneath the Village's roads. These facilities were in place before the Village was incorporated. The Village subsequently began road improvement and drainage work under its "Special Assessment Project No. 8." The project decreased the depth of coverage over the Water District's water mains, increasing the danger that they would freeze in the winter, and also changed the elevation of some of the Water District's valve boxes. The Village's assess-

ment provided no funds to cover the anticipated expenses of lowering the water mains or readjusting the valve boxes to grade. The Water District does not have the power of special assessment and pays for maintenance and new construction of water distribution facilities through revenues and public revenue bond financing.

The Water District filed this suit and, in an amended complaint for declaratory judgment and money damages, sought a determination that the Village was legally obligated to reimburse it for its anticipated relocation expenses of $38,000. The Water District maintained that its statutory authority to maintain facilities under the Village's streets gave it an easement which the Village could not damage without compensation.

Following the parties' filing of a stipulation of facts and cross-motions for summary judgment, the trial court held that the Water District's statutory right to use the public ways for its facilities was subordinate to the Village's authority, under the police power, to regulate streets and that, therefore, the Village was not responsible for the Water District's relocation expenses. Summary judgment was granted in favor of the Village, and the Water District's motion for summary judgment was denied.

On appeal, the Water District first maintains that it possesses an easement under the Village's roads which has been damaged and taken without just compensation. The Water District claims that the source of its alleged easement is section 9 of the Water District Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 196), which provides:

> "Every public water district organized under this Act is authorized to construct, maintain, alter and extend its water mains as a proper use of highways along, upon, under and across any highway, street, alley or public ground in the State, but so as not to inconvenience the public use thereof, and the right and authority are hereby granted to any such district to construct, maintain and operate any conduit or conduits, water pipe or pipes, wholly or partially buried or otherwise in, upon and along any of the lands owned by said State under any of the public waters therein; provided that the right, permission and authority hereby granted shall be subject to all public rights of commerce and navigation and the authority of the United States in behalf of such public rights, and also to the laws of the State of Illinois to regulate and control the same."

■ Although this provision clearly creates certain rights and privileges in favor of water districts to construct and maintain water mains under public roadways of this State, its terms do not specifi-

cally give rise to easements in or under public roadways in the State as opposed to some other type of property interest. (See *Boland v. Walters* (1931), 346 Ill. 184, 188, 178 N.E. 359 (grant of right or privilege to do particular acts upon the land without possessing any estate or interest therein is more appropriately termed a license rather than an easement).) The more fundamental question, and the second argument raised by the Water District on appeal, is whether the Water District's rights and privileges under section 9 of the Water District Act, whatever they are labeled, were damaged or taken by the Village without just compensation. In other words, we must determine whether the rights conferred under section 9 were granted subject to the Village's power to repair and maintain its public roadways. If so, then the exercise of the power is consistent with the Water District's rights under section 9 and does not take any private property right for which the Water District must be compensated.

The parties have cited several decisions from other jurisdictions which they argue are persuasive. Upon review, these cases are of little assistance as they involve different statutes and considerations than those arising under Illinois law. We believe that the most instructive case in this regard is *Peoples Gas Light & Coke Co. v. City of Chicago* (1952), 413 Ill. 457, 109 N.E.2d 777, which involved the construction of a subway system in the City of Chicago. The city ordinance providing for construction of the subway also called for all public utilities to relocate any equipment located on the public roadways where necessary to accommodate the subway. The plaintiff in *Peoples Gas* was a natural gas utility company which operated pursuant to a franchise granted by city ordinance. Pursuant to the franchise, the utility had constructed, operated and maintained public utility equipment in and along the streets and alleys of Chicago for more than 90 years. (*Peoples Gas*, 413 Ill. at 458-60, 109 N.E.2d at 778-79.) The utility brought suit alleging that the city could not constitutionally compel it to bear the expense of relocating its gas lines.

The Illinois Supreme Court held that the utility's franchise rights were granted subject to the city's police power, derived from the authority of the State, to operate and maintain the public roadways. (*Peoples Gas*, 413 Ill. 2d at 463-64, 109 N.E.2d at 781.) The court reasoned that, with regard to "public utilities and service companies authorized by franchise to exercise certain rights of easement in the public streets," a "city cannot lawfully grant to a utility any rights or privileges which are inconsistent with the public necessities in the way for street purposes." (*Peoples Gas*, 413 Ill. at 464, 109 N.E.2d at 781.) The court concluded that, because the utility's rights under the

franchise ordinance were taken subject to the city's police power, the city's subsequent exercise of that power in building the subway did not constitute an unconstitutional taking of the utility's property. Thus, the utility was forced to bear the cost of relocating its gas lines. *Peoples Gas*, 413 Ill. at 474, 109 N.E.2d at 786.

The Water District argues that *Peoples Gas* is not applicable here because the utility in that case derived its authority by virtue of a franchise extended by the city through an ordinance, while the Water District's rights were extended by the State by statute in section 9 of the Water District Act.

■■ We do not find this distinction to be significant. The basis of the decision in *Peoples Gas* is that a city may not alienate or delegate its police power. The police power is a general term used to express the particular right of a government which is inherent in every sovereign. (16A Am. Jur. 2d *Constitutional Law* §361 (1979).) It is elementary that a municipality possesses no inherent police power and can only legislate upon, or with reference to, that which is authorized by the State. (See *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 189, 157 N.E.2d 33.) Thus, a municipality's power over public streets is merely the power of the State in that regard, such power having been delegated in part to the municipality. *Peoples Gas*, 413 Ill. at 464, 109 N.E.2d at 781.

■■ ■ The effect of the Water District's attempt to distinguish *Peoples Gas* from the instant case would be to conclude that the State could have alienated the police power over the public streets through section 9 of the Water District Act. It is fundamental, however, that the police power is inalienable; neither a State nor its municipalities may surrender or limit such power. (*State Public Utilities Comm'n ex rel. Quincy Ry. Co. v. City of Quincy* (1919), 290 Ill. 360, 365-66, 125 N.E. 374.) Therefore, just as the city in *Peoples Gas* could not grant an easement or franchise to the utility in derogation of its police power over public streets (*Peoples Gas*, 413 Ill. at 464, 109 N.E.2d at 781), neither can the State alienate its sovereign power to control public streets in the public interest through a statute (see *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority* (1970), 45 Ill. 2d 243, 253-54, 258 N.E.2d 569).

■■ There is nothing in section 9 of the Water District Act which indicates that the rights and privileges granted to water districts thereunder impliedly surrendered any of the State's power and authority to control and improve its streets, and if there were, it would be void. (See *Peoples Gas*, 413 Ill. at 466, 109 N.E.2d at 782.) In fact, section 9 expressly provides that the authorization granted to water

districts shall be "subject to all public rights of commerce and navigation *** and also to the laws of the State of Illinois to regulate and control the same." Ill. Rev. Stat. 1989, ch. 111⅔, par. 196.

■■ ■ Remembering that "[s]o far as its streets are concerned, a city is only an agency of the State" (*Peoples Gas*, 413 Ill. at 464, 109 N.E.2d at 781), the following statement from *Peoples Gas* is appropriate here:

> "If the city [acting as an agency of the State] could not change the grade or the width of its streets except upon condition that it make compensation to the *** water company *** for inconvenience and expense thereby occasioned, the duty of the city to protect the public in its use of the streets from time to time, as the community develops, to keep the streets in such condition as will accommodate public safety and convenience, would be seriously interfered with." *Peoples Gas*, 413 Ill. at 465, 109 N.E.2d at 782.

Therefore, we conclude that the rights and privileges extended to the Water District under section 9 of the Water District Act were granted by the State subordinate to the Village's authority, derived from the State, to control and maintain public streets and roadways. There being no argument presented by the Water District that the Village's construction project was not properly undertaken pursuant to this authority, we hold that the Village did not interfere with the Water District's rights under section 9 of the Water District Act and that the Water District is not entitled to compensation for the cost of relocating its mains.

The entry of summary judgment in favor of the Village is, therefore, affirmed.

Affirmed.

BOWMAN and DUNN, JJ., concur.